2024 IL App (4th) 230552

NO. 4-23-0552

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| JAMES E. COONS JR., | ) | No. 13CF19 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Douglas Larson, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Steigmann and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, James E. Coons Jr., appeals the Adams County circuit court's denial of his postconviction petition following a third-stage evidentiary hearing. Defendant argues that he received an unreasonable level of assistance from his postconviction counsel due to counsel's failure to amend his *pro se* postconviction petition and to present evidence to support some of the claims in the petition at the evidentiary hearing. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        In 2013, defendant was charged with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)), attempted predatory criminal sexual assault of a child (*id.* §§ 8-4(a), 11-1.40(a)(1)), aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)), and sexual exploitation of a child (*id.* § 11-9.1(a)(1)).

¶ 4        At a jury trial, the victim testified concerning numerous incidents during which defendant sexually abused her when she was a child attending an in-home daycare run by defendant and his wife. Her sister also testified concerning abuse she experienced at the daycare. The victim testified on cross-examination that she did not like defendant and his wife very much, she believed they did not properly supervise the children at times, and they did not feed them appropriate meals. Both the victim and her sister testified that there was a mirror above defendant's bed. The victim's sister testified defendant told her he had this mirror "so he could watch when you're having sex and stuff." Several defense witnesses testified that they had been in defendant's bedroom and had never seen such a mirror.

¶ 5        The jury found defendant guilty of all four counts. The trial court sentenced defendant to 12 years' imprisonment for predatory criminal sexual assault of a child, 8 years' imprisonment for attempted predatory criminal sexual assault of a child, 6 years' imprisonment for aggravated criminal sexual abuse, and 364 days in the county jail for sexual exploitation of a child.

¶ 6        On direct appeal, we affirmed the judgment of the trial court but remanded the matter for a preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into posttrial claims of ineffective assistance of counsel raised by defendant. *People v. Coons*, 2015 IL App (4th) 130885-U, ¶ 40.

¶ 7        On remand, the trial court held a *Krankel* inquiry, during which defendant extensively discussed several claims of ineffective assistance of trial counsel. During the inquiry, Brett Jansen, defendant's trial counsel, also discussed the claims. Defendant had discussed, *inter alia*, a "police interrogation video" that showed that the victim and her sister "were after money" and in a "vendetta" against him. Jansen stated he remembered one video of an interview

with the victim but that he did not use the video at trial because the victim testified consistently with the statements in the video. Following the *Krankel* inquiry, the court determined that further posttrial proceedings were not warranted. Defendant appealed, but his appeal was subsequently dismissed on his own motion.

¶ 8         On November 15, 2016, defendant, *pro se*, filed a postconviction petition, which alleged several claims of ineffective assistance of trial counsel. First, the petition alleged Jansen failed to consult with defendant and fully inform him regarding important issues and decisions. Specifically, the petition alleged Jansen failed to spend "any time" with defendant discussing the case. The petition also asserted that while Jansen was representing defendant, he interviewed for and was offered a job in the state's attorney's office, which was a conflict of interest that he failed to disclose.

¶ 9         Next, the petition alleged that Jansen failed to conduct an adequate pretrial investigation. Specifically, the petition alleged that Jansen was ineffective for failing to call the victim's "step uncle," Wayne Miller, as a witness to testify to the victim's reputation for untruthfulness. The petition stated that it did not include Miller's affidavit because defendant had been unable to locate him. The petition also alleged Jansen should have introduced Illinois Department of Children and Family Services (DCFS) records from an unrelated matter in which the victim falsely accused someone of physical abuse. The petition also stated that Jansen told defendant that he had viewed the victim's DCFS interview in the instant case and "you could tell from watching the video the [victim] was lieing [*sic*] and trying to exstort [*sic*] money."

¶ 10        The petition also alleged that Jansen "intentionally used trickery to cause petitioner to forfeit his right to plea negotiations." The petition stated that Jansen advised defendant on the day of trial that he had turned down a plea bargain offer, "believing [defendant]

was not going to plead guilty, and the fact he had the case beat." The petition alleged Jansen made no attempt to advise defendant of the plea offer before turning it down.

¶ 11    The petition also alleged Jansen failed to interview "crucial defense witnesses," who could have testified that "the kids were always fed, took places, and, that, there was no ceiling mirror in [defendant's] house." These witnesses included Devon Wombles, Becky Moffitt, Elizabeth Mahsman, and Miller. The petition alleged that Miller would have also testified that he observed the victim and her sister engaged in a sexual act with their brother and that the girls and their mother stated "a stepson" was involved instead to "keep [the girls' brother] *** out of trouble."

¶ 12    An affidavit from Moffitt was attached to the petition, in which Moffitt stated she had observed the children at the daycare, including the victim, and they were always fed and well cared for. She did not observe the children ever act scared or ill at ease. Moffitt also indicated defendant never had a mirror on the ceiling of his bedroom. The petition indicated no affidavits were attached from Miller, Mahsman, or Devon Wombles because defendant was unable to locate them.

¶ 13    On January 17, 2017, defendant, *pro se*, filed an amended postconviction petition, which added two issues related to fines and fees but otherwise incorporated by reference his initial petition.

¶ 14    On April 12, 2017, the trial court entered an order appointing counsel to represent defendant in the postconviction proceedings and docketing the petition for further consideration. Postconviction counsel requested continuances over the next three years. He indicated at several status hearings that he had been conferring with defendant, reading the record, and working on

an amended petition. In December 2018, counsel indicated he was "ready to start making an amended petition."

¶ 15           On June 18, 2020, the State filed a motion to dismiss the claims in defendant's initial *pro se* postconviction petition and an answer to the fines and fees issues in the *pro se* amended postconviction petition. On September 16, 2021, postconviction counsel filed a certificate of compliance pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel subsequently indicated he would not be filing an amended petition. The trial court denied the State's motion to dismiss, and the State filed an answer to the petition. The parties agreed to an order disposing of the fines and fees issues, and the court entered an order advancing the remaining issues to a third-stage evidentiary hearing.

¶ 16           On May 27, 2022, the trial court held a third-stage evidentiary hearing. Defendant testified that Jansen met with him three or four times before his jury trial and that none of these meetings lasted longer than 10 minutes. Defendant stated Jansen never presented him with any plea offers from the State. Defendant indicated that he would have considered a plea offer if one had been presented to him. He stated he told Jansen he did not want to plead guilty, but he never said he would not do it. Defendant stated there was a video showing "the children was just mainly after [his] money" and Jansen told him he had nothing to worry about.

¶ 17           On cross-examination, the State asked defendant about the video he had referenced. Defendant said he had viewed the video one time with Jansen, though he had not seen "that much of the video to know that much about it." Defendant stated that Jansen told him there was nothing incriminating on the video and it appeared that "all they want is money." Defendant indicated he believed Jansen should have shown this video in court.

¶ 18      On cross-examination, defendant also testified he believed Jansen had a conflict of interest in representing him because he had agreed to accept a job at the state's attorney's office, though he did not know if this occurred while Jansen was representing him. Defendant stated he believed that Jansen conspired with the state's attorney's office because defendant told Jansen that the events described by the victim could not have happened the way she initially described, and the victim changed her story after that. Defendant believed Jansen told the State about their private conversation, and this prompted the victim to change her story. Defendant indicated he believed Jansen was actively trying to get a job with the state's attorney's office while representing him.

¶ 19      The State called Jansen as a witness. Jansen testified that he was currently working as an assistant state's attorney, but he had been a public defender at the time he represented defendant. Jansen indicated he started working for the state's attorney's office approximately one year after his representation of defendant ended. He stated he was not in the process of applying for a job there at the time he represented defendant, though working for the state's attorney's office was a "long term goal" for him at the time. Jansen stated he had a couple of meetings with defendant that each lasted longer than 30 minutes and he also had several shorter meetings with defendant.

¶ 20      The State presented Jansen with a document it had marked as People's exhibit 1. Jansen indicated it was an offer letter from the state's attorney's office directed to him in regard to defendant's case. Jansen did not independently recall the specifics of the offer, but he testified he remembered receiving a written offer and communicating the offer to defendant. Jansen stated defendant told him he "would not plead guilty to any offense where he was going to say he did do something to that girl." People's exhibit 1 was not admitted into evidence.

¶ 21    The State asked Jansen if he knew what defendant was talking about with regard to the video of the victim defendant claimed should have been presented at trial. Jansen stated he did not remember such a video. Jansen stated he never shared confidential client communications with the state's attorney's office while representing defendant.

¶ 22    During arguments, postconviction counsel stated: "Your Honor, while [defendant's] original petition included additional allegations, I believe there's only a handful that are really relevant here today." Counsel stated the "primary issue" was whether a plea offer from the State was ever communicated to defendant and argued defendant had consistently denied ever having been informed of such an offer. Counsel noted defendant's testimony that Jansen had spent less than an hour meeting with him prior to trial. Counsel also stated that while the dates of Jansen's "actual employment with the State's Attorney's Office" did not "match up," he had testified that he was interested in working for the state's attorney's office the entire time he was a public defender. Counsel argued that, if Jansen did not represent his clients to the fullest of his ability due to this interest, it would be a conflict of interest.

¶ 23    The State argued that Jansen's testimony showed he communicated the plea offer to defendant and defendant was not interested in accepting it. The State also argued Jansen's long-term goal of working for the state's attorney's office did not create a conflict of interest. The State then asserted that defendant had raised numerous issues in the postconviction petition that were not addressed at the hearing, such as witnesses not being called to testify. The State argued that those issues were addressed in the prior *Krankel* inquiry and the trial court had previously found Jansen did not provide ineffective assistance.

¶ 24    The trial court took the matter under advisement and subsequently entered an order denying the petition. This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26        On appeal, defendant argues that his postconviction counsel provided an unreasonable level of assistance because he failed to amend the *pro se* postconviction petition "and/or present evidence to support the claims in the *pro se* postconviction petition at the evidentiary hearing." Defendant contends that his postconviction counsel offered evidence on only one of his claims—that Jansen failed to present him with a plea offer. With regard to this claim, defendant argues postconviction counsel acted unreasonably in failing to have People's exhibit 1, a plea offer letter to defendant, admitted for the purpose of showing it had never been presented to defendant. Defendant also argues that his postconviction counsel acted unreasonably by failing to present any evidence in support of his remaining claims. Defendant argues that, because postconviction counsel did not withdraw any of his *pro se* claims at the second stage on the basis that they lacked merit, counsel was required to provide evidentiary support for each of the claims at the third-stage hearing. Defendant contends that counsel's failure to present sufficient evidence in support of his claims at the third-stage hearing demonstrates counsel failed to substantially comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and argues the matter must be remanded for further postconviction proceedings regardless of the merit of his underlying claims.

¶ 27        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) provides a method by which imprisoned persons may claim that there was a substantial denial of their constitutional rights in the proceedings which resulted in their convictions. *People v. Johnson*, 2021 IL 125738, ¶ 22. Proceedings under the Act have three stages. *Id.* ¶ 24. At the first stage, the trial court may summarily dismiss a postconviction petition that it determines to be frivolous or patently without merit. *Id.* If the petition is not dismissed at the first stage, it

advances to the second stage, where counsel may be appointed to assist an indigent defendant. *People v. Domagala*, 2013 IL 113688, ¶ 33. At this stage, the State may file a motion to dismiss or an answer to the petition. *Id.* The court must determine whether the allegations in the petition, taken as true, and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* If the court determines at the second stage that the petitioner has made the requisite substantial showing, the matter advances to a third-stage evidentiary hearing, where the court determines, based on the evidence presented, whether the petitioner is in fact entitled to relief. *Id.* ¶ 34.

¶ 28　　　　There is no constitutional right to counsel during postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 29. Rather, "[t]he right to assistance of counsel in postconviction proceedings is a matter of legislative grace, and a defendant is guaranteed only the level of assistance provided by [the Act]." *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Our supreme court has held that the Act affords postconviction petitioners the right to a reasonable level of assistance of counsel, which is "less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); see *Cotto*, 2016 IL 119006, ¶¶ 30, 45.

¶ 29　　　　At the second stage of postconviction proceedings, postconviction counsel's duties are prescribed by Rule 651(c). *People v. Addison*, 2023 IL 127119, ¶ 37. Rule 651(c) provides a "vehicle for ensuring a reasonable level of assistance." (Internal quotation marks omitted.) *Cotto*, 2016 IL 119006, ¶ 41. Rule 651(c) provides, in relevant part, that postconviction counsel must certify that he or she (1) "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "has examined the record of the proceedings at the trial"; and (3) "has made any amendments

to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 30    Counsel's certification that he or she has complied with the duties set forth in Rule 651(c) creates a rebuttable presumption that counsel provided the petitioner with a reasonable level of assistance. *People v. Urzua*, 2023 IL 127789, ¶ 54. Counsel must comply with Rule 651(c) regardless of whether the claims in the *pro se* petition are viable. *Addison*, 2023 IL 127119, ¶ 35. When compliance with Rule 651(c) is not shown at the second stage, harmless error analysis is inapplicable. *Id.* Rather, a defendant is entitled to a remand for his attorney to "comply with the limited duties required by Rule 651(c)," even if the claims raised in the petition lack merit. *Id.* ¶ 37.

¶ 31    While postconviction counsel's duties are prescribed by Rule 651(c) at the second stage, our supreme court "has not prescribed by rule specific duties that counsel must perform at the third stage." *Id.* ¶ 38. Once a petition advances to a third-stage evidentiary hearing, Rule 651(c) no longer applies. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 28; see *People v. Marshall*, 375 Ill. App. 3d 670, 683 (2007) ("Third-stage counsel does not, as Rule 651(c) requires, examine the record or amend the petition further."). Instead, courts have recognized that the only standard for assessing postconviction counsel's performance at a third-stage hearing is that of "general reasonableness." *Pabello*, 2019 IL App (2d) 170867, ¶ 29; see *People v. Beverly*, 2022 IL App (4th) 210677-U, ¶¶ 69-70.

¶ 32                           A. Standard of Review

¶ 33    Initially, the parties disagree as to the standard of review. Neither party cites authority that is directly on point, and we are unable to find an opinion discussing the standard of review to be applied under the circumstances presented in the instant case. Citing *People v.*

*Suarez*, 224 Ill. 2d 37, 41-42 (2007), which involved a claim of unreasonable assistance of postconviction counsel at the second stage, defendant argues that his claim of unreasonable assistance of postconviction counsel is subject to *de novo* review. The State argues that, because an evidentiary hearing was held where factfinding and credibility determinations were involved, the manifest error standard applies. See *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009); *People v. Coleman*, 183 Ill. 2d 366, 384-85 (1998) ("The manifestly erroneous standard represents the typical appellate standard of review for findings of fact made by a trial judge.").

¶ 34   While the manifest error standard applies to the trial court's decision to deny a postconviction petition following an evidentiary hearing (see *Ortiz*, 235 Ill. 2d at 333), defendant is not challenging the court's evaluation of his postconviction claims or its assessment of the third-stage evidence in this case. Rather, defendant argues the matter should be remanded because he received an unreasonable level of assistance from postconviction counsel during third-stage proceedings. This issue was not addressed below, and accordingly, there are no factual findings or credibility determinations to which we may defer concerning postconviction counsel's performance. Accordingly, we find *de novo* review to be appropriate in this case. See *Coleman*, 183 Ill. 2d at 384-85 (holding that the manifestly erroneous standard of review was not appropriate at the second stage of postconviction proceedings because the trial court had made no findings of fact or credibility determinations).

¶ 35          B. Applicability of Rule 651(c)

¶ 36   In the instant case, defendant argues throughout his brief that his postconviction counsel failed to comply with Rule 651(c) by "failing to amend the *pro se* postconviction petition and/or present evidence to support claims in the *pro se* postconviction petition at the evidentiary hearing." As we have discussed, Rule 651(c) prescribes the duties of postconviction

counsel at the second stage of postconviction proceedings, not the third stage. See *Addison*, 2023 IL 127119, ¶¶ 37-38. Here, postconviction counsel filed a Rule 651(c) certificate during the second stage of proceedings, creating a rebuttable presumption that he complied with the rule's requirements that he consult with defendant about his allegations he was deprived of his constitutional rights, examine the trial record, and make any necessary amendments to the petition to adequately present defendant's claims. See *Urzua*, 2023 IL 127789, ¶ 54.

¶ 37 In his initial brief, defendant contends only that counsel should have attached additional evidentiary support to the *pro se* postconviction petition at the second stage. He does not otherwise identify any amendments he believes postconviction counsel should have made to the allegations in the *pro se* petition. However, "[w]here a petition is not supported by affidavits or other evidence, a court can ordinarily presume that postconviction counsel made a concerted effort to obtain such things in support of the defendant's claims but was unable to do so." *People v. Turner*, 2023 IL App (1st) 191503, ¶ 44; see *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) ("In the ordinary case, a trial court ruling upon a motion to dismiss a post-conviction petition which is not supported by affidavits or other documents may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so.").

¶ 38 Here, there is nothing in the record rebutting the presumption that postconviction counsel made an effort to obtain additional supporting evidence at the second stage but was unable to do so. While counsel indicated at times that he would be preparing an amended petition, the record does not establish that counsel was or could have been in possession of additional supporting evidence that he failed to attach to the petition. The record is silent as to counsel's reasons for ultimately electing not to amend the petition, which may have been

strategic. Accordingly, nothing in the record rebuts the presumption that counsel complied with Rule 651(c) at the second stage.

¶ 39 Defendant cites *People v. Thompson*, 2016 IL App (3d) 150644, in support of the proposition that postconviction counsel's failure to attach evidentiary support to a petition can rebut the presumption created by the filing of a Rule 651(c) certificate. However, we find *Thompson* to be distinguishable. The *Thompson* court found that postconviction counsel's failure to obtain and review the defendant's mental health records rebutted the presumption created by counsel's Rule 651(c) certificate that he took the steps necessary to adequately present the defendant's claim. *Id.* ¶ 23. However, in *Thompson*, the record established that the mental health records existed but that postconviction counsel failed to attach them to the petition. *Id.* ¶¶ 8-9; see *Johnson*, 154 Ill. 2d at 241 (holding the record rebutted the presumption that postconviction counsel made an effort to obtain affidavits or other evidence where counsel submitted an affidavit on appeal establishing that counsel made no efforts to investigate the claims raised in the *pro se* petition or obtain affidavits). In the instant case, however, the record does not establish that additional evidentiary support existed or that counsel failed to make a concerted effort to obtain additional support.

¶ 40 C. Reasonableness of Postconviction Counsel at the Third Stage

¶ 41 Once defendant's postconviction petition advanced to the third stage, "general reasonableness" was the relevant standard for assessing postconviction counsel's performance rather than the duties required by Rule 651(c). See *Pabello*, 2019 IL App (2d) 170867, ¶ 29. While the Act does not require that a postconviction petitioner receive the level of assistance required by *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* test is an "essential standard for comparison" when assessing general reasonableness at the third stage. (Internal

quotation marks omitted.) *Pabello*, 2019 IL App (2d) 170867, ¶ 36. This is because, if counsel's performance is acceptable under the higher *Strickland* standard, it necessarily meets the lower standard of reasonableness under the Act. *Id.* ¶¶ 36-37.

¶ 42       To prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant must show that his counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland*, 466 U.S. at 687. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[A] defendant's failure to satisfy either part of the *Strickland* test will defeat a claim of ineffective assistance ***." *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 43       We first address defendant's argument that postconviction counsel acted unreasonably by failing to present People's exhibit 1—a plea offer letter the State presented to Jansen at the evidentiary hearing—to establish defendant's lack of knowledge of it and to have the exhibit admitted. We find defendant was not prejudiced by counsel's failure to have this exhibit admitted into evidence. Defendant testified that his trial counsel never presented him with any plea offers. However, Jansen testified that he did communicate a plea offer to defendant. The trial court apparently found Jansen's testimony on this point to be more credible than defendant's. A reasonable probability does not exist that the court's credibility determination would have been different if People's exhibit 1 had been admitted and defendant had testified that he had not seen the specific written plea offer set forth in People's exhibit 1. Such evidence would have been cumulative of defendant's testimony that he was never presented with any plea offer.

¶ 44    Defendant also argues it was unreasonable for counsel to effectively abandon the remaining claims in the petition at the third-stage hearing by failing to present evidence or argument on them. Specifically, defendant argues that counsel should have presented Miller's testimony, evidence in addition to Moffitt's affidavit showing that none of the children attending the daycare were mistreated, "evidence from a DCFS investigation with the victim that showed she lied" (though defendant asserts it is unclear from the allegations in the petition what matter this investigation related to), and a video of an interview of the victim showing she was lying and interested in money. Defendant argues that because counsel failed to withdraw any of the claims asserted in the *pro se* petition at the second stage of proceedings, we may presume that he found all the claims in the petition to be grounded in fact and warranted by the existing law. Defendant contends counsel was "required to provide evidentiary support for each of what must have been meritorious claims."

¶ 45    We find defendant cannot establish that he was prejudiced by postconviction counsel's failure to present the evidence he contends should have been presented because the record does not establish that such evidence existed or was available to postconviction counsel. Counsel may have been unable to locate the witnesses, video, and other evidence alluded to in the petition after conducting a reasonable investigation. It is also possible that postconviction counsel spoke to witnesses identified by defendant and learned their testimony would not support the allegations in the petition. Similarly, counsel may have obtained the video of the victim's interview and determined it did not support the allegations in the petition that it showed the victim was only interested in money. Notably, Jansen indicated during the *Krankel* inquiry that he only remembered viewing one video recording of the victim being interviewed and that her statements in this video were largely consistent with her trial testimony.

¶ 46        Even assuming that postconviction counsel could have located the witnesses identified in the petition and that they would have testified consistently with the allegations in the petition, it is not clear their testimony could have supported a viable claim of ineffective assistance of trial counsel. Three of the witnesses identified by defendant—Devon Wombles, Becky Moffitt, and Elizabeth Mahsman—would have testified that defendant did not have a mirror on his bedroom ceiling and the children at the daycare were "never mistreated, always fed, and took places." At most, such testimony would have impeached the victim's testimony on relatively minor points concerning the existence of a ceiling mirror in defendant's bedroom and her belief that defendant and his wife did not serve the children appropriate meals or care for them properly at times.

¶ 47        The petition also alleged Miller would testify that the victim was untruthful, he observed her engaged in a sexual act with her brother, and she and her mother stated "a stepson" was involved in the sexual act to keep her brother out of trouble. However, Miller's alleged observation of the victim engaged in a sexual act with her brother was not relevant to whether defendant sexually assaulted the victim. Moreover, evidence of the victim's prior sexual activity was likely inadmissible at trial pursuant to section 115-7 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7 (West 2012)) unless defendant could somehow establish the admission of such evidence was constitutionally required.

¶ 48        While defendant argues that postconviction counsel should have explained the absence of the witness testimony, video of the victim's interview, and other evidence at the evidentiary hearing, he cites no authority for the proposition that counsel was required to do so. The Act requires that a postconviction petition include attached affidavits or other evidence supporting its allegations or explain why these items are not attached (see 725 ILCS 5/122-2

(West 2016)), but it does not contain a similar requirement for evidence presented at a third-stage evidentiary hearing (see *id.* § 122-6).

¶ 49 Notably, a third-stage postconviction proceeding differs substantially from proceedings at the earlier stages. At the first and second stages, postconviction counsel need merely make assertions of what evidence he will present in support of the postconviction claims and attach to the petition affidavits or other supporting evidence. The third stage requires counsel to actually present the supporting evidence in court, whether it be testimony from witnesses or various exhibits. In preparing for a third-stage hearing, postconviction counsel must determine whether he can actually secure the presence in court of witnesses whose affidavits he relied on at the first and second stages and, if so, whether the witnesses' testimony will be the same as that contained in the affidavits they signed. If counsel determines he cannot secure the presence of these witnesses or that their testimony will deviate substantially from their affidavits such that it will no longer support the allegations in the postconviction petition, then counsel will not present the testimony of such witnesses. If counsel fails to present the testimony of a witness for either of these reasons, the law does not—and should not—require counsel at the third-stage proceeding to explain the witness's absence.

¶ 50 Defendant argues that if postconviction counsel found some of the claims in his petition to be frivolous or unsupportable, he was required pursuant to Rule 651(c) to amend the petition to eliminate such claims. Defendant contends that, if counsel found amendment to be impossible, he was required to either withdraw pursuant to *People v. Greer*, 212 Ill. 2d 192, 211-12 (2004), or stand on the *pro se* petition and explain why there were no amendments pursuant to *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008). We find that *Pace* and *Greer* are inapplicable, as both cases concern counsel's duties when he or she determines there are no

meritorious issues in a postconviction petition that may be raised. See *Greer*, 212 Ill. 2d at 211-12; *Pace*, 386 Ill. App. 3d at 1062; see also *People v. Kuehner*, 2015 IL 117695, ¶ 27. Here, postconviction counsel clearly found at least some of the issues in the petition to be nonfrivolous, as the record shows he presented evidence and argued in support of defendant's claims that trial counsel was ineffective for failing to adequately consult with defendant prior to trial and for failing to adequately inform him regarding plea negotiations. Neither *Greer* nor *Pace* stands for the proposition that postconviction counsel is required—either at the second stage or the third stage—to provide the court with an explanation when he or she abandons some, but not all, of the claims alleged in a *pro se* petition.

¶ 51        Here, the record does not indicate why counsel failed to present evidence in support of some of the claims raised in the postconviction petition. If counsel had determined at some point before the evidentiary hearing that he would not be able to provide evidentiary support for the remaining claims in the petition or to argue them in good faith, he ideally would have withdrawn the unsupportable claims. Pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), "both the parties and the attorneys have an affirmative duty to conduct an inquiry of the facts and the law before filing an action, pleading, or other paper and that the failure to make such an inquiry could subject them to sanctions." *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 259-60 (2001); see *Greer*, 212 Ill. 2d at 205 (applying Rule 137 to postconviction proceedings); see also Ill. R. Prof'l Conduct (2010) R. 3.1 (eff. Jan. 1, 2010). This duty "continues after a suit is filed, and an attorney is professionally obligated to dismiss a baseless suit, even over his or her client's objection, when the attorney learns the client no longer has grounds for a case." *Asher Farm Ltd. Partnership v. Wolsfeld*, 2022 IL App (2d) 220072, ¶ 54.

¶ 52　　　　However, postconviction counsel's duty to withdraw baseless claims is an ethical duty owed by counsel, as an officer of the court, to the court and public. See *In re Custody of Caruso*, 185 Ill. App. 3d 739, 744-45 (1989); *Rankin*, 321 Ill. App. 3d at 260 ("The purpose of Rule 137 is to prevent the abuse of the judicial process by penalizing those who bring vexatious or harassing actions without sufficient foundation."). It is not a duty postconviction counsel owes to a defendant as part of the reasonable assistance required of counsel under the Act. Though counsel's practice in this case of effectively abandoning some of the postconviction claims at the evidentiary hearing was not ideal, the record does not establish whether this was due to counsel's failure to investigate and present available evidence on these claims or his failure to formally abandon unsupportable claims. If it was the latter, defendant was not prejudiced.

¶ 53　　　　As the record does not show the additional evidence defendant claims should have been presented at the evidentiary hearing existed or was available, defendant cannot show that his postconviction counsel's performance was ineffective under *Strickland* because he cannot demonstrate prejudice. Accordingly, he also cannot show that counsel failed to meet the lower standard of providing reasonable assistance under the Act. See *Pabello*, 2019 IL App (2d) 170867, ¶ 37 ("[W]e will measure counsel's performance at the third-stage hearing to see if it passes the higher *Strickland* standard. If it does, then it necessarily meets the lesser reasonableness standard.").

¶ 54　　　　　　　　　　　　　III. CONCLUSION

¶ 55　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 56　　　　Affirmed.

*People v. Coons*, 2024 IL App (4th) 230552

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Adams County, No. 13-CF-19; the Hon. Scott Douglas Larson, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Nancy L. Vincent, State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Gary L. Farha, State's Attorney, of Quincy (Patrick Delfino, Edward Psenicka, and Richard S. London, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |