NOTICE
Decision filed 06/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240516-U

NO. 5-24-0516

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 15-CF-198 |
| | ) | |
| MATTHEW CRAWFORD, | ) | Honorable |
| | ) | Allan F. Lolie, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's denial of the defendant's amended postconviction petition after a third-stage evidentiary hearing is affirmed, where the defendant received reasonable assistance of postconviction counsel and where the evidence failed to show he was prejudiced under the circumstances of entering his guilty plea.

¶ 2    The defendant, Matthew Crawford, pled guilty to two counts of predatory criminal sexual assault in a negotiated plea agreement. He subsequently filed a postconviction petition asserting ineffective assistance of plea counsel. The circuit court appointed counsel, who filed an amended petition. The circuit court denied the amended petition after a third-stage evidentiary hearing. The defendant appeals, arguing that his postconviction counsel provided unreasonable assistance by failing to shape his claims into proper legal form in the amended petition and by failing to present necessary arguments and testimony to the circuit court at the hearing. We affirm.

1

¶ 3                              I. BACKGROUND

¶ 4     In December 2015, the defendant was charged by information with three counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2014)). The charges involved allegations that he molested his then-girlfriend's seven-year-old daughter. The State's evidence against the defendant included a video-recorded confession and a video-recorded interview with the victim conducted at the Child Advocacy Center (CAC).

¶ 5     In February 2017, attorney David Grigsby was appointed to represent the defendant after four previous public defenders withdrew due to conflicts of interest. On June 1, 2017, Grigsby filed an amended motion to suppress the defendant's confession, arguing that he made his statements during a custodial interrogation without the benefit of the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).[1] The circuit court held a hearing on that motion at which two investigating officers testified and Grigsby presented arguments in support of the written motion. On September 7, 2017, the court entered an order denying the defendant's motion to suppress his statements.

¶ 6     On May 7, 2018, the defendant pled guilty to two counts of predatory criminal sexual assault. In exchange for his plea, the State agreed to drop the third charge and recommended consecutive sentences of 15 years on one charge and 10 years on the second charge. At the plea hearing, the defendant confirmed that he had sufficient opportunity to discuss the terms of the plea agreement with his attorney and that he wanted to plead guilty. After the State presented the terms of the plea agreement, the defendant confirmed that he understood the terms of the agreement and again confirmed that he wanted to plead guilty. The circuit court asked the defendant if he

_____

[1]Two of the defendant's previous attorneys likewise filed motions to suppress, which remained pending when Grigsby was appointed to represent the defendant.

understood that the matter was set for a trial the following day and that he could choose to go to trial if he wanted to do so. The defendant replied, "Yes, Your Honor."

¶ 7 The circuit court then explained to the defendant the rights he would have if he chose to go to trial. When asked if he understood these rights, the defendant indicated that he did. The circuit court once again asked the defendant whether he wanted to waive those rights by pleading guilty, to which the defendant replied, "Yes, Your Honor." The circuit court asked, "Has anyone coerced you or forced you in any way to get you to plead guilty?" In response, the defendant stated, "No, Your Honor."

¶ 8 Next, the circuit court explained each charge to the defendant along with the potential penalties. The defendant indicated that he understood the charges and wished to plead guilty. The circuit court then stated, "This will be your last chance to change your mind before we proceed with this. Do you wish to proceed or wish to go to the bench trial tomorrow?" The defendant replied, "Continue, Your Honor." At this point, the circuit court found that the defendant's decision to plead guilty was knowing and voluntary. After the State presented a factual basis, the court accepted the defendant's plea, imposed the agreed-upon sentences, and advised the defendant of his appeal rights. The defendant did not file a motion to withdraw his plea or a direct appeal.

¶ 9 On November 23, 2020, the defendant filed a *pro se* petition seeking relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). He alleged that his plea was not voluntary because his attorney gave him "misleading" information regarding the victim's statements. According to the defendant, the victim's statements were inconsistent with the medical reports. The defendant further alleged that his attorney did not show him tapes of the witness's statement or other "necessary evidence" that would have allowed him to make an informed choice

3

concerning his plea. Finally, he alleged that in urging him to accept a plea agreement, counsel said, "I don't like representing your kind."

¶ 10 In July 2021, the circuit court appointed attorney Ariana Thurnau to represent the defendant in proceedings on his petition. On August 29, 2022, Thurnau filed an amended postconviction petition on the defendant's behalf. She asserted that Grigsby provided ineffective assistance of plea counsel by (1) failing or refusing to review the State's discovery materials with the defendant; (2) failing to inform the defendant of inconsistencies in the victim's statement, the medical reports, and the police reports; and (3) inducing the defendant to accept a plea agreement by making statements "which led him to believe that counsel would not take his case to trial." Thurnau asserted that the defendant "would not have plead [*sic*] guilty to the charges had he had full access to the State's evidence." The amended petition also incorporated the allegations of the defendant's *pro se* petition.

¶ 11 Attached to the amended petition were a certificate of compliance with Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) signed by Thurnau and a supporting affidavit signed by the defendant. In his affidavit, the defendant stated that Grigsby refused to review evidence with him or allow him access to the evidence. The defendant further averred that Grigsby urged him to take a plea because "he refuses to take this type of case to trial." The defendant alleged that Grigsby told him, "I don't like representing your kind." Finally, the defendant noted that Grigsby was the fifth attorney to represent him and alleged that Grigsby "made it seem as if he was [the defendant's] last option."

¶ 12 On October 26, 2022, the State filed a motion to dismiss, arguing that the record refutes the defendant's claim that he felt coerced into accepting a plea and that the petition does not

4

establish the prejudice necessary to support a claim of ineffective assistance of plea counsel. The circuit court denied the State's motion to dismiss on November 6, 2023.

¶ 13    The matter proceeded to an evidentiary hearing on March 4, 2024. The defendant testified that four or five attorneys represented him before Grigsby. According to the defendant, the judge presiding over the plea proceedings indicated that Grigsby was the last available court-appointed attorney available to represent him.

¶ 14    The defendant further testified that he met with Grigsby three times—twice in Grigsby's office, and once at the courthouse. He testified that at the first meeting, Grigsby had not yet received the discovery materials provided by the State. In addition, the defendant testified, "When I first met with Mr. Grigsby, he stated that he did not like to represent these types of cases."

¶ 15    The defendant acknowledged that at their second meeting, Grigsby showed him the video recording of the victim's CAC interview; however, he testified that Grigsby did not discuss the video with him. He stated, "I asked to go over the other evidence there was, to understand what I was going to decide to do, and we just didn't go over any of it." The defendant stated that he asked Grigsby to look into evidence from Department of Children and Family Services cases involving the victim and her sister, but Grigsby told him those cases were not relevant.

¶ 16    The defendant next described his third meeting with Grigsby. He testified that Grigsby called him and asked him to come to the courthouse to discuss a possible plea deal. This meeting took place one week before the plea hearing and lasted for "about an hour."

¶ 17    The defendant testified that he had reservations about accepting the plea agreement because he believed the 25-year aggregate sentence was a lot of time to accept. Asked by Thurnau if Grigsby said anything "that pressured [the defendant] into accepting this plea," the defendant replied, "He just stated that I should really consider taking a deal; guys in this situation receive a

5

lot of time, and it's in my best interest if I ever want to see daylight again." The defendant admitted that during the plea hearing, he told the circuit court that no one coerced him to accept a plea. Asked why he did not raise his concerns with the court at the plea hearing, the defendant explained that he felt he did not have a choice. He elaborated as follows:

> "I felt like that was the last lawyer I was going to receive, that this case was going on for a long period of time. At certain times the judge was angry that the case had went on so long already, so I just felt like I didn't—there was nothing I could do."

Finally, the defendant testified that he did not believe he would have the assistance of an attorney in filing a motion to withdraw his plea because Grigsby told the defendant that he would be on vacation soon after the case ended.

¶ 18 Grigsby then testified that at the time he represented the defendant, he had retired from his position as a full-time public defender, but he still handled cases as the conflicts attorney. He estimated that he had handled "hundreds" of cases involving sex offenses over the course of his career, "if not more." Grigsby denied telling the defendant, "I don't like representing your kind." He likewise denied refusing to allow the defendant to review evidence. He testified that if the defendant had wanted to go to trial, he would have represented him at that trial.

¶ 19 On cross-examination, Grigsby acknowledged that he did not remember how many times he met with the defendant or any specific conversations he had with the defendant. He testified that he could not recall what he advised the defendant concerning the plea agreement, but he explained that his general practice was to explain to a client "what could possibly happen" if he went to trial, including the possible sentence.

¶ 20 The circuit court also questioned Grigsby. The following exchange occurred:

"Q. I know—maybe you don't remember this because you—there was a suppression motion *** and the judge did not suppress the statement where the defendant clearly had confessed. Given the confession and the fact that there was a CAC interview with the victim, at that time did you form an opinion as to how strong the State's case was?

A. Yes.

Q. What was that opinion?

A. That it was a very strong case and that should he go to either a jury trial or bench trial there was a likelihood that a conviction could be had by the State."

¶ 21 Thurnau noted in her closing argument that to succeed on a claim of ineffective assistance of plea counsel, the defendant must satisfy the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). She argued that Grigsby provided ineffective assistance by failing to ensure that the defendant's plea was voluntary. She urged the circuit court to find the defendant's testimony more credible than Grigsby's because Grigsby admitted he did not remember his conversations with the defendant. She argued that the defendant's plea was clearly not voluntary where Grigsby led the defendant to believe that he would not take the case to trial and that no other attorney was available to represent him. Thurnau did not present any argument concerning how the defendant was prejudiced as a result. See *Strickland*, 466 U.S. at 687. After the State presented its closing argument, the circuit court took the matter under advisement to allow for further review of the record.

¶ 22 On March 8, 2024, the circuit court entered a detailed written order containing its findings. The court first found that the circuit judge who presided at the plea hearing "fully and properly admonished" the defendant and that the defendant's answers to the judge's questions "never gave any indication that he was being coerced to take the plea or had any issue with his attorney." The

7

circuit court next noted that although the defendant claimed he would not have pled guilty if he had full access to the State's evidence, he did not specify what evidence he did not see. The circuit court expressly found Grigsby's testimony credible. The court further found that Grigsby represented the defendant "in a professional manner" at the hearing on the motion he filed to suppress the defendant's confession.

¶ 23    The circuit court next considered whether the defendant met the *Strickland* test. In assessing Grigsby's performance, the court emphasized that "it is virtually impossible to secure an acquittal when there is a fully recorded confession and a child victim statement." The circuit court reiterated that Grigsby filed a motion to suppress the defendant's conviction, and stated that when that motion was denied, Grigsby advised the defendant that "the case against him was very strong" and negotiated a plea agreement involving a 25-year aggregate sentence. The circuit court found the plea agreement reasonable "given the much longer sentence faced by the defendant with a third count going to trial." The circuit court thus concluded that Grigsby's performance was objectively reasonable and was not deficient.

¶ 24    The circuit court went on to find that, even assuming Grigsby's performance was "somehow deficient," the defendant failed to demonstrate prejudice. The circuit court opined, "Trials are a gamble." The circuit court further explained that pursuant to the plea agreement, the defendant accepted "a lengthy sentence instead of risking a much lengthier sentence upon conviction after trial." The circuit court denied the defendant's postconviction petition. This timely appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    The defendant argues that his postconviction counsel did not provide him with reasonable assistance by failing to adequately assert that he suffered prejudice as a result of Grigsby's alleged

8

mistakes. As such, he contends, we must remand this matter for new second-stage proceedings. We disagree.

¶ 27    Before addressing the defendant's contentions, we briefly address the State's argument that the defendant forfeited his claims by failing to file a motion to withdraw his guilty plea. The State relies on *People v. Hampton*, 165 Ill. 2d 472 (1995). There, however, the question was whether the defendant forfeited review of a claim by failing to raise it in his direct appeal. *Hampton*, 165 Ill. 2d at 478. Here, the defendant did not file a direct appeal. Thus, *Hampton* does not apply. Filing a motion to withdraw plea is a condition precedent to filing a direct appeal from a judgment on a guilty plea. *People v. Flowers*, 208 Ill. 2d 300-01 (2003). However, this requirement does not apply to proceedings under the Post-Conviction Hearing Act. *People v. Stroud*, 333 Ill. App. 3d 416, 418 (2002); *People v. Stein*, 255 Ill. App. 3d 847, 848 (1993). As such, we reject the State's contention, and we will now turn our attention to the merits of the defendant's claims.

¶ 28    The Post-Conviction Hearing Act provides a three-stage process for asserting claims that a defendant's conviction or sentence resulted from a substantial deprivation of constitutional rights. *People v. Agee*, 2023 IL 128413, ¶ 36. At the first stage, the circuit court conducts an independent review of the postconviction petition to determine whether it is frivolous or patently without merit. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 28. To survive this stage, a petition need only present the gist of a constitutional claim. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 28. If the court does not dismiss the petition within 90 days—either because it meets this threshold or because the court does not rule within 90 days—the petition advances to the second stage. *Agee*, 2023 IL 128413, ¶ 36.

¶ 29    At the second stage of postconviction proceedings, an indigent defendant is entitled to have counsel appointed. *Agee*, 2023 IL 128413, ¶ 37; *Hotwagner*, 2015 IL App (5th) 130525, ¶ 32. At

this stage, the State may choose to file a motion to dismiss the petition. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 29. In ruling on a second-stage motion to dismiss, courts must take as true all well-pled facts in the petition that are not refuted by the record. If the circuit court finds that the petition makes a substantial showing of a constitutional violation, the matter advances to the third stage. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 29.

¶ 30　The third stage generally involves an evidentiary hearing, which allows the parties to develop matters outside of the trial record. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 30. At this stage, the defendant bears the burden of proving a substantial showing of a constitutional violation. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 30.

¶ 31　Because the source of the right to counsel at the second and third stages of postconviction proceedings is statutory, rather than constitutional, the level of legal assistance required is not the same level of assistance that is constitutionally guaranteed to defendants at trial. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 29. Instead, a defendant is entitled to the level of assistance mandated by the Post-Conviction Hearing Act, which the Illinois Supreme Court has defined as a reasonable level of assistance. *People v. Coons*, 2024 IL App (4th) 230552, ¶ 28. This is a lower standard than the effective assistance of counsel required during trial proceedings. *Coons*, 2024 IL App (4th) 230552, ¶ 28; *People v. Watson*, 2022 IL App (5th) 190427, ¶ 41. We consider *de novo* whether postconviction counsel provided reasonable assistance. *Coons*, 2024 IL App (4th) 230552, ¶ 34.

¶ 32　Here, the defendant challenges aspects of Thurnau's representation at both the second and third stages. We will therefore set forth the standards for evaluating postconviction counsel's assistance at both stages.

¶ 33　One component of providing reasonable assistance is compliance with Rule 651(c) (*Watson*, 2022 IL App (5th) 190427, ¶ 42), which sets forth counsel's duties at the second stage

10

(*Coons*, 2024 IL App (4th) 230552). Rule 651(c) requires counsel to (1) consult with the defendant to ascertain his claims of error, (2) examine the trial court record and transcripts, and (3) make any amendments to the *pro se* petition necessary to adequately present the defendant's claims to the circuit court. *Watson*, 2022 IL App (5th) 190427, ¶ 42 (citing Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). The duty to make necessary amendments requires counsel to shape the defendant's contentions into proper legal form. *Watson*, 2022 IL App (5th) 190427, ¶ 42.

¶ 34    Here, appointed counsel Thurnau filed a Rule 651(c) certificate attesting that she performed all three of these duties. This certificate gave rise to a rebuttable presumption that she provided reasonable assistance to the defendant. *Watson*, 2022 IL App (5th) 190427, ¶ 43. To overcome the presumption, the defendant must demonstrate that counsel did not comply with the requirements of the rule. *Watson*, 2022 IL App (5th) 190427, ¶ 43.

¶ 35    The defendant contends that Thurnau failed to comply with the third requirement of Rule 651(c) by failing to adequately shape his claim of ineffective assistance of plea counsel into proper legal form. However, the circuit court denied the State's motion to dismiss and advanced the amended petition to the third stage, indicating that the circuit court found that the petition made a substantial showing of a constitutional violation. Thus, regardless of any asserted shortcomings in Thurnau's drafting of the amended petition, her amendments were adequate to present the defendant's claims to the circuit court at the second stage. See *Watson*, 2022 IL App (5th) 190427, ¶ 46. This defeats the defendant's claim that he received unreasonable assistance at the second stage.

¶ 36    At the third stage of the postconviction proceedings, Rule 651(c) is not applicable. Instead, the standard is one of generable reasonableness. *Coons*, 2024 IL App (4th) 230552, ¶ 41; *Watson*, 2022 IL App (5th) 190427, ¶ 47. Although the reasonable assistance mandated by the Post-

11

Conviction Hearing Act "is not coextensive with the level of assistance required under *Strickland*," this court has nevertheless found the two-part *Strickland* test to be a useful analytical tool. *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37. If a defendant claiming unreasonable assistance of postconviction counsel cannot satisfy the higher standard of the *Strickland* test, counsel's performance "necessarily meets the lesser reasonableness standard" applicable in third-stage postconviction proceedings. *Watson*, 2022 IL App (5th) 190427, ¶ 48; see also *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 36; *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37.

¶ 37 Under the *Strickland* test, a defendant must demonstrate both that counsel's performance was deficient and that prejudice resulted. To establish prejudice the defendant must demonstrate a reasonable probability that, absent counsel's unprofessional mistakes, the result of the proceeding would have been different. *Coons*, 2024 IL App (4th) 230552, ¶ 42 (citing *Strickland*, 466 U.S. at 687, 694). Failure to satisfy either part of the test defeats a claim of ineffective assistance of counsel. *Coons*, 2024 IL App (4th) 230552, ¶ 42. Although, as the defendant correctly points out, a showing of prejudice is not necessary in cases where appointed postconviction counsel fails to comply with Rule 651(c) and the circuit court dismisses the petition at the second stage (*People v. Addison*, 2023 IL 127119, ¶ 33), the prejudice part of the *Strickland* test is pertinent to assessing the general reasonableness of counsel's third-stage performance (see *Watson*, 2022 IL App (5th) 190427, ¶ 50).

¶ 38 The defendant contends that Thurnau failed to present testimony or arguments at the evidentiary hearing that were necessary to support his claim of ineffective assistance of plea counsel. Before addressing this contention, we will set forth what such a claim entails.

¶ 39 The constitutional right to the assistance of counsel applies at all critical stages of criminal proceedings, including plea proceedings. *People v. Brown*, 2017 IL 121681, ¶ 25. Claims of

12

ineffective assistance of plea counsel are subject to the *Strickland* test. As just discussed, that test requires the defendant to demonstrate both that plea counsel's performance was objectively deficient and that the defendant was prejudiced as a result. *Agee*, 2023 IL 128413, ¶ 50. In the context of a guilty plea, an attorney's performance is deficient if he failed to ensure that the defendant entered the plea knowingly and voluntarily. *Agee*, 2023 IL 128413, ¶ 50. To establish prejudice, the defendant must demonstrate a reasonable probability that if not for plea counsel's mistakes, he would have insisted on going to trial and would not have pled guilty. *Agee*, 2023 IL 128413, ¶ 51. A bare allegation to that effect is not enough. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Rather, the defendant must show that there was a plausible defense he could have raised at trial (*Hall*, 217 Ill. 2d at 335-36) or that rejecting a plea would have been rational under the circumstances (*Brown*, 2017 IL 121681, ¶ 40; *People v. Hughes*, 2012 IL 112817, ¶ 65).

¶ 40 The defendant argues that at the evidentiary hearing, Thurnau failed to argue either that the defendant had a plausible defense he could have presented or that rejecting the plea agreement would have been rational. He further contends that she failed to elicit testimony that would have supported such an argument. We note that although the defendant frames these contentions as a claim that Thurnau failed to cure a deficiency in her amended petition, we believe these allegations are more appropriately considered in assessing the reasonableness of her third-stage assistance. For the following reasons, we find that she provided reasonable assistance.

¶ 41 Although we acknowledge that Thurnau did not address the prejudice element of his ineffective assistance of plea counsel claim in her closing argument, we reject the defendant's claim that she did not elicit testimony to support this element. She attempted to elicit such testimony from the defendant by asking him why he did not want to accept the plea deal offered by the State. In response, the defendant indicated that 25 years was "a lot of time." The circuit

13

court directly addressed this testimony in its order. As we mentioned previously, the circuit court indicated that the defendant accepted a lengthy sentence in hopes of avoiding an even longer sentence. Although the defendant's response ultimately was not sufficient to support his claim of ineffective assistance of counsel, we must emphasize that even under the higher standard required by *Strickland*, a defendant is entitled to competent, not perfect, representation. See *People v. Davis*, 2023 IL App (1st) 220231, ¶ 28.

¶ 42 Moreover, as we discussed at length earlier, the circuit court thoroughly reviewed the record of the plea proceedings, carefully assessed Grigsby's performance, and expressly found that it was not deficient. Although the court went on to consider the prejudice part of the *Strickland* test, the primary basis for its decision was clearly its finding that Grigsby's performance was constitutionally adequate. On appeal, the defendant does not challenge this finding or suggest anything Thurnau should have done that might have led to a different conclusion on that question. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 43 Because the circuit court rejected the defendant's claim that Grigsby's performance was deficient, the defendant could not have prevailed on his claim of ineffective assistance of plea counsel even if Thurnau was able to successfully demonstrate prejudice in the plea proceedings. Consequently, the defendant cannot demonstrate prejudice resulting from her third-stage performance, thus failing to meet "the higher standard set forth in *Strickland*." See *Watson*, 2022 IL App (5th) 190427, ¶ 50. Under this court's holding in *Watson*, we must therefore conclude that she rendered reasonable assistance at the third stage of the postconviction proceedings.

¶ 44                                    III. CONCLUSION

¶ 45 For the foregoing reasons, we affirm the order of the circuit court denying the defendant's petition for postconviction relief.

¶ 46    Affirmed.