2025 IL App (4th) 240693-U

NO. 4-24-0693

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
August 6, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JONATHAN A. CHAMBERS, | ) | No. 17CF107 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reversed the denial of defendant's postconviction petition and remanded the cause with directions for postconviction counsel to file an amended petition compliant with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 2    Defendant, Jonathan A. Chambers, appeals the denial of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Defendant asserts postconviction counsel failed to provide reasonable assistance and failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). We agree postconviction counsel failed to comply with Rule 651(c) and thus reverse the denial and remand the cause to allow postconviction counsel to file an amended petition consistent with this decision.

¶ 3                    I. BACKGROUND

¶ 4                A. The Procedural History of This Case

¶ 5    This case has an unusually complex procedural history. We start by laying it out

briefly as a guide to the more detailed discussion of the facts of this case.

¶ 6        In January 2018, a jury found defendant guilty of attempted harassment of a witness (720 ILCS 5/8-4(a), 32-4a(a)(2) (West 2016)). The victim/witness was Jamie Ware, who had testified against defendant in Livingston County case No. 16-CF-299, a narcotics distribution case.

¶ 7        In this case, the trial court sentenced defendant to eight years' imprisonment. Trial counsel moved to reconsider the sentence. While counsel's motion was pending, defendant filed a *pro se* motion relating to this case, case No. 16-CF-299, and Livingston County case No. 16-CF-298 (another narcotics distribution case). The court dismissed defendant's motion because he was represented by counsel. Defendant appealed, contending (1) in all three cases, the court was required to hold an inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), on his claims of ineffective assistance of counsel and (2) in this case, the court erred in overruling a hearsay objection to testimony elicited by the State.

¶ 8        We remanded cases No. 16-CF-299 and No. 16-CF-298 for *Krankel* inquiries. *People v. Chambers*, 2020 IL App (4th) 180340-U, ¶¶ 16-18 (*Chambers I*).

¶ 9        In February 2019—during the pendency of the direct appeals—defendant filed a *pro se* petition in this case under the Act. He raised multiple claims, including a claim the trial court deprived him of his right to confront witnesses by allowing the State to introduce hearsay testimony.

¶ 10        The trial court summarily dismissed the claim as frivolous, and defendant appealed.

¶ 11        This court consolidated the direct appeal in this case with the appeal of the dismissal of defendant's *pro se* petition. On April 23, 2021, we held the trial court erred by failing to conduct a *Krankel* inquiry. *People v. Chambers*, 2021 IL App (4th) 180342-U, ¶ 17 (*Chambers II*). However, we declined to address defendant's postconviction petition, reasoning the results of the

*Krankel* inquiry might render defendant's petition moot. *Id.* ¶¶ 20, 22. We further declined to decide defendant's claim relating to the court's admission of hearsay, reasoning this claim might also be rendered moot. *Id.* ¶ 18. We retained jurisdiction over defendant's remaining claims (*id.* ¶ 18) so we might address them should the *Krankel* inquiry not render those claims moot.

¶ 12        In June 2021, the trial court conducted the *Krankel* inquiries we mandated in *Chambers I* and *Chambers II*. The court found no merit to defendant's ineffective-assistance claims. Defendant appealed in all three cases. When this case returned to us, we noted defendant's *pro se* postconviction petition was not moot, and we therefore set the appeal of the postconviction petition's summary dismissal for briefing pursuant to our reservation of jurisdiction in *Chambers II*.

¶ 13        On May 9, 2023, before we considered the appeal of the *pro se* petition, we decided *People v. Chambers*, 2023 IL App (4th) 210160-U, (*Chambers III*), in which we addressed the *Krankel* hearings. In *Chambers III*, defendant also raised, as a matter of plain error, a claim relating to hearsay testimony in this case. *Id.* ¶ 115. The latter was, in essence, the hearsay claim we declined to address as potentially moot in *Chambers II*. We held the *Krankel* inquiries in all three cases were sufficient. *Id.* ¶¶ 88-108. Concerning the hearsay issue, we held: "Defendant has not met his burden of establishing a clear error occurred. In his opening brief, defendant developed no argument [to show the testimony the State elicited] was a 'statement' within the definition of hearsay." *Id.* ¶ 115.

¶ 14        On June 29, 2023, we held (for reasons we will later discuss with greater specificity) defendant's *pro se* petition stated the gist of a constitutional claim and remanded the case for second-stage proceedings. *Chambers IV*, 2023 IL App (4th) 190523-U, ¶¶ 29-30.

¶ 15                          B. Defendant's Trial

¶ 16 Based on this outline, we can focus the discussion of facts on the issues raised in this appeal, beginning with defendant's trial.

¶ 17 In April 2017, defendant was charged with multiple counts relating to his efforts to make indirect contact with Ware, a major witness against him in the June 2017 trial in case No. 16-CF-299. The State elected to try defendant on a single count in a November 2017 amended indictment—attempted harassment of a witness (720 ILCS 5/8-4(a), 32-4a(a)(2) (West 2016)).

¶ 18 At defendant's jury trial, the State offered the testimony of two witnesses—Shad Hamilton (a longtime friend of defendant's), and Brian Maier (an officer in the Dwight Police Department). Hamilton authenticated recordings of four phone calls defendant made to him from jail, and the State played the recordings for the jury.

¶ 19 We addressed the contents of the calls in detail in *Chambers IV*, 2023 IL App (4th) 190523-U, ¶¶ 8-15, and thus only summarize them here. In the first call, defendant said he would be speaking "in code." Despite this, the calls make clear defendant wanted Hamilton to persuade Ware not to testify. Defendant believed her testimony was necessary for the State to win at trial. The calls also suggested defendant wanted Hamilton to use Ware's friendship with defendant and Hamilton as the basis for his persuasion. Defendant said he thought of Ware as a "sister" and indicated he wished her well. In the final call, Hamilton suggested Ware would not testify. Hamilton also agreed he (1) spoke to Ware about her testimony and (2) knew she had worked with the police as a "confidential source."

¶ 20 The State's second and final witness was Officer Maier. He testified he was a narcotics investigator and worked with undercover sources, including Ware, who was "a chief witness" in a controlled-substance case against defendant. (Ware was a witness in Livingston County case No. 16-CF-299.)

¶ 21        After Maier testified he had obtained recordings of calls made from the jail "purportedly about your witness, Jaime Ware," the following exchange ensued:

"[THE STATE]: Did you speak with [Ware] about the recordings?

A. Yes.

Q. She had come to you regarding help for what was happening?

A. Correct.

[DEFENSE COUNSEL]: Objection.

THE COURT: Hold on. What was the objection?

[DEFENSE COUNSEL]: Hearsay regarding help.

THE COURT: That's not a hearsay statement. Overruled. The jury can consider.

***

[THE STATE]: And without saying anything that she told you, you gave her help with the situation. Correct?

A. Correct.

Q. And investigated it, as far as getting the phone calls to my office?

A. Correct."

The State concluded its direct examination of Maier with this question.

¶ 22        On redirect, the State asked Maier whether "Ware live[s] around her[e] anymore." He said she did not, and he agreed "she now lives in a different state."

¶ 23        In his closing argument, defense counsel argued:

"It's not enough for the State to say [defendant] asked Mr. Hamilton to go talk to the witness. They have got to show more. They have to show, number one,

that his intent was to harass or annoy *** Ware. There's been no showing whatsoever that anything was intended to harass or annoy her. There's been no showing that she actually was harassed or annoyed. And it's got to be not just a little bit of harassment. It's got to be so much so that it's done in a way, in such a manner as to produce mental anguish or emotional distress."

¶ 24        The State, in rebuttal, used Maier's testimony about Ware's coming to him for "help." However, instead of limiting itself referring to her request for help, it asserted, in the following exchange, Ware's request showed she was experiencing "emotional distress":

"[THE STATE:] "Jamie Ware sought out the help of law enforcement after the conversation. As far as her emotional distress, she sought out the help and received from Officer Maier assistance in this. She's not even in the area anymore.

So as far as evidence of what exactly transpired with Jamie Ware and this harassment that the defense says isn't there, I think you have everything you need to find that it is. She's not even in the area anymore. She cared enough to go to police despite as we heard Shad Hamilton being a long term friend of his, of hers. Long time friend.

The situation clearly put her in a situation where she was uncomfortable. Situation where she knew I'm going to be getting, there's going to be stuff going on if I don't avoid testifying in court.

[DEFENSE COUNSEL]: I'm going to object.

THE COURT: Hold on. What's the objection?

[DEFENSE COUNSEL]: Arguing facts not in evidence.

THE COURT: Or reasonable inferences. Overruled. The jury can consider

the argument."

¶ 25        During its deliberations, the jury sent a question to the trial court: "Can you verify that the officer testified that *** Weir [*sic*] contacted Officer Maier *AFTER* all of the phone recordings?" The court provided the jury with a transcript of Maier's testimony, which was redacted to remove the colloquy relating to defense counsel's objection. On January 10, 2018, the jury found defendant guilty of the charged offense.

¶ 26        On February 9, 2018, defense counsel filed a "Motion for a New Trial," which argued solely the evidence was insufficient to support the conviction. The trial court denied the motion.

¶ 27        On March 6, 2018, the trial court sentenced defendant to eight years' imprisonment, to be served consecutively to defendant's sentences in cases No. 16-CF-298 and No. 16-CF-299.

¶ 28        On March 16, 2018, defense counsel filed a motion to reconsider the sentence. However, while counsel's motion was pending, defendant filed a *pro se* motion in this case and cases No. 16-CF-298 and No. 16-CF-299. Defendant asserted, among other things, defense counsel had failed to object to "*Second hand Statements*" (emphasis in original) relating to Maier's interaction with Ware. The trial court struck the motion because defendant had counsel.

¶ 29        Defendant appealed, and in *Chambers II*, we determined defendant's *pro se* motion required the trial court to conduct a *Krankel* inquiry. We thus remanded the matter for the required proceedings.

¶ 30                         C. Defendant's *Pro Se* Postconviction Petition

¶ 31        On February 8, 2019, defendant filed the *pro se* postconviction petition in this case. In *Chambers IV*, we described defendant's contentions as follows: "[D]efendant asserted multiple claims of constitutional error, including arguing he was denied his sixth-amendment right to

- 7 -

confront witnesses against him when the State's use of the word "help" was allowed at trial. [Citation.] Defendant further emphasized the jury's question during deliberations that focused on that testimony." *Chambers IV*, 2023 IL App (4th) 190523-U, ¶ 20. The trial court dismissed the petition as frivolous and patently without merit. Defendant appealed.

¶ 32 We reversed, holding, *inter alia*, defendant had stated "the gist of a constitutional claim." *Chambers IV*, 2023 IL App (4th) 190523-U, ¶ 29. We concluded the "arguable constitutional violations include not only a due-process violation but also the denial of defendant's right to effective assistance of counsel." *Id.* ¶ 31. These claims arose from the State's use of facts not in evidence—albeit putatively derived from Maier's testimony—to contend the evidence showed Ware suffered emotional distress, which was not an element of attempted harassment. *Id.* ¶ 29.

> "Whether Ware suffered any distress by communicating with Hamilton is arguably irrelevant to the attempt charge. Defendant was charged with attempted harassment. Attempt is committed when, '*with intent to commit a specific offense*, [the offender] does any act that constitutes a substantial step toward the commission of that offense.' " (Emphasis in original.) *Id.* ¶ 29 (quoting 720 ILCS 5/8-4(a) (West 2016)).

A further source of potential constitutional error was the State's arguably improper repurposing of Maier's testimony about his interaction with Ware. *Id.* ¶ 30. This testimony was admissible "to explain the officer's investigative steps," but the State used the testimony in rebuttal to argue it had proved Ware's " 'actual distress.' " *Id.*

¶ 33 We also held, "given the jury's question during deliberations," the problems surrounding the State's use of Maier's testimony arguably had the potential to change the outcome

of the trial. *Id.* ¶ 31. Thus, the rebuttal arguably caused the type of prejudice necessary to show either (1) the closing argument was improper (*id.* ¶ 28) or (2) defense counsel's failure to object to portions of the argument constituted unreasonable assistance of counsel (*id.* ¶ 31). We thus remanded. *Id.* ¶ 33. We filed our order in June 2023.

¶ 34　　　　We filed our order in *Chambers III* about seven weeks earlier. After determining the trial court's *Krankel* inquiry had been adequate, we rejected defendant's claim the court had committed plain error when it overruled counsel's hearsay objection to Maier's testimony Ware had come to him for "help":

> "Under the plain-error rule, a court of review may consider an otherwise forfeited argument under one of two scenarios [(either of which require defendant to show a clear or obvious error occurred).]
>
> ***
>
> Defendant has not met his burden of establishing a clear error occurred. *** Defendant provides no legal support for the argument the admission of a reference to a situation, without revealing the words spoken, is clear error based on hearsay."
>
> *Chambers III*, 2023 IL App (4th) 210160-U, ¶¶ 113-115.

¶ 35　　　　The trial court appointed postconviction counsel for defendant in August 2023. Counsel filed defendant's amended postconviction petition in December 2023, raising three claims.

¶ 36　　　　The first claim asserted Maier's answer to the State's question about Ware coming to him for " 'help for what was happening' " was hearsay and did not fall under the " 'course of investigation' exception." Maier's statement about Ware wanting "help" was hearsay because "it tended to prove Ware was somehow under emotional distress and sought out help from officers

because of it." Further, "the State completely disregarded the limited purpose for which the evidence should have been admitted and used the evidence substantively in closing rebuttal to establish [defendant's] guilt rather than to explain the investigatory procedure of Officer Maier." Although the petition stated, "The issues raised on post-conviction review are limited to those that could not or were not previously raised on direct appeal or in prior post-conviction proceedings," counsel did not address why defendant could raise the issue of hearsay despite our having addressed it in *Chambers III*.

¶ 37      Second, defendant claimed "his right to due process was infringed and he was not given a fair trial when the prosecution interjected improper remarks in its rebuttal closing argument. Among other things, "the state used [Maier's testimony] in their favor even though they were arguing improper inferences when they reference[d] Ware's emotional distress."

¶ 38      Third, the petition contained a claim defense counsel was ineffective for failing to investigate the possibility of calling Ware as a witness.

¶ 39      The petition contained a blanket contention the claims raised in the petition were meritorious and defendant's attorneys during the appeals were thus ineffective for failing to raise the issues. As we noted, the petition did not address why an issue previously raised might avoid being barred. Postconviction counsel provided a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 40      The State answered the amended petition with a general denial.

¶ 41      An evidentiary hearing on defendant's amended petition took place on February 26, 2024. Ware and defendant were the only witnesses; their testimony related to the claim trial counsel was ineffective for failing to investigate the possibility of calling Ware as a witness.

¶ 42      The trial court denied defendant's amended petition in April 2024.

¶ 43    This appeal followed.

¶ 44                    II. ANALYSIS

¶ 45    Defendant now argues postconviction counsel provided unreasonable assistance for two reasons. First, defendant asserts postconviction counsel should not have included in the amended petition the hearsay claim he raised, and we rejected, in *Chambers III*; he asserts, because this claim was barred by *res judicata*, counsel acted unreasonably by including it. Second, he contends postconviction was unreasonable for failing to raise "the issue that this Court found was warranted" in *Chambers IV*, namely, Maier's testimony about Ware seeking law enforcement help was "arguably irrelevant" (*Chambers IV*, 2023 IL App (4th) 190523-U, ¶ 30). Although defendant argues postconviction counsel's assistance was unreasonable, he also indicates counsel violated Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which, among other things, requires counsel to have "made any amendments to the petition[ ] filed *pro se* that are necessary for an adequate presentation of petitioner's contentions."

¶ 46    In response, the State contends postconviction counsel provided reasonable representation at the third-stage evidentiary hearing.

¶ 47            A. The Standard for Postconviction Representation

¶ 48    The Act provides a procedural mechanism for criminal defendants to assert a substantial violation of their federal or state constitutional rights occurred during trial or at sentencing. *People v. House*, 2021 IL 125124, ¶ 15. The purpose of a postconviction proceeding is to allow an inquiry into constitutional issues which have not been, and could not have been, raised on direct appeal. *Id.* Claims raised and decided on direct appeal are barred by the doctrine of r*es judicata*, and claims which could have been raised, but were not, are forfeited. *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). These procedural bars are "relaxed" where, *inter alia*,

they stem from the ineffective assistance of appellate counsel. *People v. Williams*, 209 Ill. 2d 227, 233 (2004).

¶ 49          The Act provides a three-stage process for adjudicating postconviction petitions. *People v. Allen*, 2015 IL 113135, ¶ 21. At the first stage, the trial court reviews the petition independently and determines whether it states the gist of a constitutional violation or is frivolous or patently without merit. *People v. Bailey*, 2017 IL 121450, ¶ 18. If the petition is not summarily dismissed at the first stage, it is advanced to the second stage, where counsel is appointed for the defendant if he is indigent, and the State may file an answer or a motion to dismiss the petition. *People v. Johnson*, 2018 IL 122227, ¶¶ 14-15.

¶ 50          The right to counsel in postconviction proceedings is not constitutional in nature but is a "matter of legislative grace." *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). Therefore, a postconviction defendant is only entitled to the level of assistance guaranteed by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999). The Act requires postconviction counsel to provide a " 'reasonable level of assistance.' " *Id.* To this end, Rule 651(c) sets forth specific duties postconviction counsel must fulfill. *Id.* Rule 651(c) requires postconviction counsel to (1) consult with the defendant to ascertain his or her contentions, (2) examine the record of the trial proceedings, and (3) make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of [defendant's] contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). "[T]he purpose of Rule 651(c) is to ensure that counsel shapes the [defendant's] claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007).

¶ 51          Compliance with Rule 651(c) is mandatory, but counsel creates a rebuttable presumption of reasonable assistance by filing a Rule 651(c) certificate. *People v. Addison*, 2023 IL 127119, ¶ 21. The defendant bears the burden of rebutting the presumption by showing

postconviction counsel did not substantially comply with the requirements of the rule. *Id.* The defendant may rebut the presumption by demonstrating counsel did not make all the necessary amendments to the *pro se* petition, including amendments necessary to overcome procedural bars. *Id.* However, in *People v. Williams*, 2025 IL 129718, ¶ 46 (*Michael Williams*), our supreme court held a reviewing court cannot presume "there were additional facts and allegations that counsel could have included in the petition" based on the mere existence of deficiencies in a claim. In rejecting the reviewing court's presumption, the *Michael Williams* court noted neither the record nor defendant's appellate brief suggested the existence of any remedy for the deficiency. *Id.*

¶ 52    "Both the scope of an attorney's duties under Rule 651(c) and an attorney's compliance with that rule are reviewed *de novo*." *People v. Frey*, 2024 IL 128644, ¶ 21.

¶ 53         B. Postconviction Counsel's Handling of the Hearsay Claim

¶ 54    Defendant argues postconviction counsel acted unreasonably by including the hearsay claim from *Chambers III*. However, he has met, albeit inadvertently, his burden to rebut the presumption of Rule 651(c) compliance created by counsel's filing of a Rule 651(c) certificate (*Addison*, 2023 IL 127119, ¶ 21). Defendant's argument highlights postconviction counsel's failure to make a necessary amendment to the petition, which is what he must do to rebut the presumption (*id.*).

¶ 55    Defendant properly cites paragraph 115 of *Chambers III* (*Chambers III*, 2023 IL App (4th) 210160-U, ¶ 115) to demonstrate we had previously addressed the amended petition's hearsay claim. But this same paragraph opens the door to a claim appellate counsel was ineffective.

¶ 56    As the amended petition correctly noted, the usual rule is a defendant cannot raise in a postconviction petition an issue they did raise or could have raised on direct appeal. See *Pitsonbarger*, 205 Ill. 2d at 456. However, appellate counsel included nothing in the amended

petition to explain how defendant could overcome this procedural forfeiture. This omission was inconsistent with Rule 651(c) compliance.

¶ 57 Our supreme court has held, "[A] failure of postconviction counsel to make a routine amendment [pleading ineffective assistance of appellate counsel] to a petition in order to overcome a procedural bar is patently unreasonable." (Internal quotation marks omitted.) *Addison*, 2023 IL 127119, ¶ 14. Here, however, paragraph 115 of *Chambers III* opened the door to a claim of ineffective assistance of appellate counsel. In *Chambers III*, defendant conceded he had forfeited any hearsay claim by failing to raise it in his posttrial motion but asked us to consider the claim under the plain-error doctrine. *Chambers III*, 2023 IL App (4th) 210160-U, ¶ 110. We held he had not met his burden to establish the occurrence of an error clear enough to be plain error. *Id.* ¶ 115. Indeed, he "provide[d] *no legal support" for his argument*. (Emphasis added.) *Id.* The record, as highlighted by defendant's brief, thus shows how counsel could have corrected the failure to plead a basis to relax the procedural forfeiture affecting the hearsay claim. See *Michael Williams*, 2025 IL 129718, ¶ 46 (the court rejected a claim of a Rule 651(c) violation where neither the record nor the defendant's brief showed how appellate counsel could improve a deficient claim).

¶ 58 Because the presumption of Rule 651(c) compliance created by postconviction counsel's certificate is rebutted, remand is necessary. Under the rule in *Addison*, we consider neither whether a defendant was prejudiced by counsel's failure to comply with the rule (*Addison*, 2023 IL 127119, ¶ 33) nor what occurred in any proceedings after postconviction counsel filed a noncompliant petition (*Id.* ¶¶ 40-41). Consequently, the State's contention postconviction counsel provided defendant with proper representation at the proceeding's third stage is irrelevant. We must remand for the filing of compliant amended petition; nothing following counsel's filing of

the deficient petition is relevant and the proceeding must start anew at the start of the second stage.

¶ 59　　　　　Having found defendant is entitled to remand for renewed second-stage proceedings, we need not address defendant's argument counsel provided unreasonable assistance by failing to include a claim based on the gist of a claim this court found in *Chambers IV*. However, we instruct the trial court to appoint defendant new postconviction counsel, and it will be the duty of new counsel to review the potential claims and determine what claims should be advanced in the new amended petition. We therefore encourage counsel to thoroughly review the claim this court addressed in *Chambers IV* to assure all meritorious claims are included in the new amended petition.

¶ 60　　　　　　　　　　　　III. CONCLUSION

¶ 61　　　　　For the reasons stated, we reverse the trial court's denial of defendant's postconviction petition and remand with directions.

¶ 62　　　　　Reversed and remanded with directions.