2026 IL App (4th) 250533

NO. 4-25-0533

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| CHARLES F. WATTS, | ) | |
| Defendant-Appellant. | ) | No. 19CF226 |
| | ) | |
| | ) | Honorable |
| | ) | Jeffery E. Tobin, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Charles F. Watts, argues that the trial court erred by dismissing his postconviction petition at the second stage of postconviction proceedings. Specifically, defendant contends that (1) he made a substantial showing of a claim of actual innocence, (2) he made a substantial showing of a claim that trial counsel was ineffective for failing to call an alibi witness, and (3) postconviction counsel failed to substantially comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) by failing to present defendant's claims in proper legal form. The State argues that the amended postconviction petition was not dismissed at the second stage but was denied after a third-stage evidentiary hearing, and, accordingly, defendant's second-stage arguments are meritless. The State also argues that the court properly denied the amended postconviction petition at the third stage, and postconviction counsel provided a

reasonable level of assistance. We affirm.

¶ 2                                      I. BACKGROUND

¶ 3                              A. Bench Trial and Direct Appeal

¶ 4            Following a bench trial in 2021, the trial court found defendant guilty of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2020)), and it sentenced him to 18 years of imprisonment.

¶ 5            We described the evidence presented at the bench trial in detail in our order in defendant's direct appeal. See *People v. Watts*, 2022 IL App (4th) 210620-U, ¶¶ 6-27. However, we will briefly summarize the relevant evidence here. The trial evidence showed that James Trotter was shot at Melinda Heaser's apartment on the night of the incident shortly before 6:45 p.m. Trotter testified that he had not been drinking alcohol or using drugs at Heaser's apartment before he was shot, and he was not under the influence of alcohol or drugs to the point that his ability to observe and recall the incident was impaired. Trotter testified that defendant entered the apartment after knocking on the door. A few minutes later, defendant pulled out a gun and shot Trotter. Trotter stated he was able to clearly view defendant's face prior to the shooting. Trotter stated he recognized defendant and had seen him on two or three prior occasions, though he only knew him by the nickname "L.C." at the time of the shooting.

¶ 6            Detective Ryan Dudley testified that he investigated the shooting. After speaking with Trotter, he developed defendant as a suspect in the case. Dudley stated he was familiar with defendant and knew that he went by the nickname "L.C." Dudley interviewed defendant, and defendant told him that, on the day of the shooting, he had been at his apartment with Terrance Linear for most of the day. Defendant stated they only left the apartment briefly to go to a nearby gas station. Dudley obtained surveillance video footage from defendant's apartment complex,

which he stated showed defendant and Linear leaving defendant's apartment at approximately 6:30 p.m. and returning at approximately 9:30 p.m. The surveillance video was admitted into evidence. Dudley acknowledged that his identifications of defendant and Linear in the video were based not on observation of their faces, but on their mannerisms and "physical descriptors," like height, weight, race, and ethnicity. Dudley stated he was familiar with both Linear and defendant and had multiple prior contacts with both of them.

¶ 7        The parties stipulated that defendant could present evidence showing that Trotter had cocaine in his system when he went to the hospital for treatment after the shooting.

¶ 8        Mia Perry testified as a defense witness. She stated that she had been in a romantic relationship with defendant for two years, and they were living together at the time of the incident. She stated that, on the day of the incident, she and defendant stayed at her apartment and watched movies from approximately 12 p.m. until 9 or 10 p.m. Linear was also at the apartment. Perry stated there were occasions when defendant left the apartment that day, though she did not remember how many times he left. She stated that her apartment was near a gas station and a store, and it was typical for them to go to those locations on a daily basis.

¶ 9        On direct appeal, we affirmed defendant's conviction and sentence. *Id.* ¶ 81.

¶ 10                        B. *Pro Se* Postconviction Petition

¶ 11        On December 12, 2023, defendant, *pro se*, filed a postconviction petition, in which he claimed that his trial counsel was ineffective for failing to call Linear as an alibi witness. Linear's unnotarized affidavit was attached to the petition as an exhibit. In the affidavit, Linear stated that, in December 2019, he was with defendant and Perry at their residence, watching television. He and defendant went to the store multiple times and to meet their "weed man" around the corner. Linear stated he was with defendant every time he left the residence.

- 3 -

Linear told the police that defendant had been with him all day. Dudley told Linear that if he did not want to go to jail, he would "leave [his] statement about [defendant] being with [him] all day alone." Linear stated that he gave defendant's attorney this information. In October 2020, defendant's attorney told Linear to "pick up [his] subpoena," and he did. In April 2021, Linear was at the courthouse, waiting for defendant's attorney to call him as a witness, but he was not called.

¶ 12       The *pro se* postconviction petition also alleged, *inter alia*, that an affidavit by an individual named Joseph Baker constituted newly discovered evidence. Baker's affidavit, which was not notarized, was filed as an exhibit to the *pro se* postconviction petition. In the affidavit, Baker stated that on the day of the incident, he and Tafari Goddard were "shar[ing] drug sales." Goddard went into a house to make a drug sale. He ran back out a few minutes later and told Baker that he "shot old man Trotter" because Trotter refused to pay him for the drugs. Goddard then showed Baker that he was in possession of a small black gun. Baker stated he did not know until 2023 that someone had been charged with shooting Trotter, and defendant was not the person who shot Trotter.

¶ 13       On December 26, 2023, defendant, *pro se*, filed a motion to supplement his postconviction petition with several claims of ineffective assistance of trial and appellate counsel.

¶ 14                     C. Amended Postconviction Petition

¶ 15       On January 19, 2024, the trial court entered an order appointing counsel to represent defendant and directing the State to file any answer or motion within 30 days. On March 18, 2024, the State filed a motion to dismiss the *pro se* postconviction petition.

¶ 16       On July 19, 2024, defendant, through counsel, filed an amended postconviction

- 4 -

petition, which stated it "adopt[ed] and amend[ed]" defendant's *pro se* postconviction petition. The amended petition asserted a claim of actual innocence based on Baker's affidavit.

¶ 17 The amended postconviction petition also raised claims of ineffective assistance of trial counsel. Specifically, the petition alleged that trial counsel was ineffective for failing to (1) object to the admission of a thumb drive containing surveillance video from outside Perry's apartment on the day of the incident and a DVD containing clips of this video based on the State's failure to establish a chain of custody for the two exhibits; (2) "either object or stipulate to the summarized publication" of these exhibits, allowing the trial court to see short video clips selected by the State, instead of the full video; (3) consult with a toxicologist to determine the level of drugs in Trotter's system and the effect on Trotter; (4) impeach Trotter with evidence of his drug use at the time he sustained his injuries; (5) move for a directed verdict based on the State's failure to call a medical professional to identify the injury sustained by Trotter as a gunshot wound; (6) have a shell casing recovered by the police tested for DNA or for comparison to other recovered shell casings to determine whether it may have been connected to another shooting or shooter; and (7) call Linear as an alibi witness. The amended postconviction petition stated: "Individually and collectively, [trial counsel's] deficiency led to a reasonable probability that, but for his unprofessional errors, the result of the trial would have been different."

¶ 18 At a status hearing on August 29, 2024, the trial court directed the State to file a responsive pleading to the amended postconviction petition within 21 days and set the matter for a hearing on the petition. The State did not file a responsive pleading. On September 30, 2024, postconviction counsel moved for a continuance because Baker, who he intended to call as a witness, had "absconded parole," and his whereabouts were unknown. The court continued the

matter.

¶ 19                           D. Hearing on Amended Postconviction Petition

¶ 20          On May 1, 2025, postconviction counsel filed a certificate of compliance pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). That same day, the trial court held a hearing on the amended postconviction petition.

¶ 21          Postconviction counsel moved to admit Baker's unnotarized affidavit. The State objected on the basis that it constituted double hearsay, asserting that "[t]he rules of evidence at this stage completely apply." Postconviction counsel stated that he had spoken to Baker several months earlier, and Baker had confirmed the information in the affidavit. However, Baker was no longer on parole, and postconviction counsel had been unable to locate him. Postconviction counsel stated he had discussed with defendant that "this was probably going to be an issue as far as Mr. Baker's appearance," but defendant wished to proceed anyway. Counsel requested that the trial court give Baker's affidavit its appropriate weight. The court sustained the State's objection and refused to admit the affidavit into evidence.

¶ 22          Postconviction counsel then discussed each of the seven claims of ineffective assistance of trial counsel alleged in the amended postconviction petition. Postconviction counsel requested that the trial court take judicial notice of trial counsel's failure to raise a chain of custody objection to the surveillance video exhibits. Postconviction counsel argued that the fact that short video clips rather than the whole video were published "could have been something that swayed the court."

¶ 23          Postconviction counsel stated that although trial counsel presented evidence that there was cocaine in Trotter's system during the incident, it was not known what effect it had on Trotter because trial counsel failed to investigate the matter. Postconviction counsel asserted that

- 6 -

trial counsel also failed to impeach Trotter by questioning him about his drug use at the time of the incident. Postconviction counsel noted that Trotter was the only witness who identified defendant as the shooter and argued his ability to identify defendant when he had drugs in his system was a "huge issue."

¶ 24　　Postconviction counsel also asserted that trial counsel failed to move for a directed verdict based on the State's failure to call a medical professional to "identify the injuries sustained by the victim," which postconviction counsel characterized as "a huge miss" by trial counsel. Postconviction counsel further stated that trial counsel failed to have a shell casing recovered by the police tested for DNA evidence or compared to other shell casings to determine whether the shell casing was connected to any other shootings.

¶ 25　　Postconviction counsel then asserted that trial counsel provided ineffective assistance by failing to call Linear as an alibi witness. Linear was present at the hearing and testified that, on the day of the incident, he and defendant were at Perry's residence. Linear arrived at approximately 10 a.m. and stayed there all day. Defendant never left Linear's sight that day, and they did not go to the apartment where Trotter was shot. They did not leave Perry's residence, except to go to a nearby gas station, which took approximately 15 minutes. The State asked Linear if that was the only time he and defendant left the residence that day, and he stated that it was.

¶ 26　　During argument, postconviction counsel stated: "Your Honor, obviously the Court struck down our Count 1 as far as the actual innocence is concerned, *** so we are left with the ineffective assistance of counsel and the Strickland test." Counsel argued that the seven issues of ineffective assistance of trial counsel raised in the amended petition, taken individually or collectively, "alter[ed] this entire case." Counsel stated: "So at this time we're asking the court

to enter an order granting the amended petition on the basis of ineffective assistance of counsel." The State argued that defendant had not met his burden and requested that the trial court "deny the defense's motion at this time."

¶ 27    On May 21, 2025, the trial court entered a written order, finding that defendant "failed to meet his burden of proof regarding actual innocence, failed to overcome the trial strategy presumption and that the alleged action or inaction of defense counsel caused prejudice to defendant." This appeal followed.

¶ 28                              II. ANALYSIS

¶ 29    On appeal, defendant argues that (1) he made a substantial showing of a claim of actual innocence based on Baker's affidavit, or, alternatively, postconviction counsel provided unreasonable assistance by failing to remedy the affidavit's lack of notarization; (2) he made a substantial showing of a claim of ineffective assistance of trial counsel based on counsel's failure to call Linear as an alibi witness; and (3) postconviction counsel provided an unreasonable level of assistance by failing to shape the claims in the petition into the proper legal form. We affirm.

¶ 30    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)) provides a method for criminal defendants to challenge their convictions for violations of their federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). The Act provides for a three-stage process for postconviction proceedings. *Id.* at 471-72. At the first stage, the trial court independently reviews a postconviction petition and may summarily dismiss it if it determines the petition to be frivolous or patently without merit. *Id.* at 472; 725 ILCS 5/122-2.1(a)(2) (West 2024).

¶ 31    If the petition is not dismissed within 90 days at the first stage, it advances to the second stage. *Pendleton*, 223 Ill. 2d at 472; 725 ILCS 5/122-2.1(b) (West 2024). At the second

stage, counsel may be appointed to represent an indigent defendant and may amend the postconviction petition. 725 ILCS 5/122-4 (West 2024); *Pendleton*, 223 Ill. 2d at 472. The State may then file a motion to dismiss. *Pendleton*, 223 Ill. 2d at 472. If the motion to dismiss is denied or if no motion to dismiss is filed, the State must answer the petition. *Id.* Then, "barring the allowance of further pleadings by the court, the proceeding *** advances to the third stage, a hearing wherein the defendant may present evidence in support of the petition." *Id.* at 472-73.

¶ 32        "Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation." *Id.* at 473. At the second stage, all well-pleaded facts not positively rebutted by the record are taken as true, and a second-stage dismissal is reviewed *de novo*. *Id.*

¶ 33        "When a petition is advanced to a third-stage, evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous." *Id.* If fact-finding and credibility determinations are unnecessary at the third stage, a *de novo* standard of review applies unless the judge ruling on the petition had "some special expertise or familiarity" with the trial proceedings and this familiarity has some bearing on the disposition of the petition. (Internal quotation marks omitted.) *Id.*

¶ 34        Initially, defendant asserts throughout his brief and his reply brief that the amended postconviction petition was dismissed at the second stage of postconviction proceedings upon the State's motion. The State, on the other hand, contends that the amended postconviction petition was denied after a third-stage evidentiary hearing.

¶ 35        While the procedural progression of the matter in the trial court was somewhat muddled, we find the petition was denied after a third-stage evidentiary hearing. Although the State filed a motion to dismiss defendant's *pro se* petition, it did not indicate that it was

persisting in seeking dismissal after postconviction counsel filed the amended postconviction petition. On August 29, 2024, the court directed the State to file a responsive pleading to the amended postconviction petition within 21 days, but the State did not, nor did it indicate that it was adhering to its prior motion to dismiss. At the hearing on May 1, 2025, the State did not seek a ruling on its motion to dismiss or object to defendant presenting evidence in support of his petition. Instead, after defendant's presentation of evidence, the State asserted that defendant had not met his burden of persuasion as to the claims in the amended petition and argued that the court should "deny the defense's motion." Under these circumstances, we find the State abandoned its motion to dismiss. See *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 72.

¶ 36     Moreover, the fact that defendant presented the testimony of a witness at the hearing on May 1, 2025, and argued that the trial court should "enter an order granting the amended petition" indicated that the hearing was a third-stage evidentiary hearing, not a second-stage hearing on the State's motion to dismiss.

¶ 37     We pause our analysis here to note that the lack of clarity in the trial court regarding the stage of proceedings has resulted in needless confusion on appeal. The court should have clarified the nature of the hearing on May 1, 2025, at the outset of the hearing, and confirmed its understanding with the parties in order to eliminate any potential confusion. Such a procedure is especially appropriate in a case such as this one, where the State neither filed a responsive pleading to the amended postconviction nor expressly indicated whether it sought to pursue its previously filed motion to dismiss the *pro se* postconviction petition.

¶ 38     On appeal, defendant's arguments start from the premise that the petition was dismissed at the second stage. However, in his reply brief, defendant notes that his burden at both the second and third stage is to make a substantial showing of a constitutional violation and

- 10 -

argues that if we find the petition was denied at the third stage, he also made the requisite substantial showing of a constitutional violation at the third stage. While defendant's arguments on appeal are not tailored to the third stage, we will attempt to address them.

¶ 39                                    A. Actual Innocence

¶ 40        Defendant argues he made a substantial showing of a claim of actual innocence based on Baker's affidavit because it was newly discovered evidence that was material, noncumulative, and of such conclusive character that it would probably change the result on retrial. Defendant further argues that, since the petition was dismissed at the second stage, Baker's affidavit must be taken as true because it is not positively rebutted by the record.

¶ 41        "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 42        Illinois Rule of Evidence 1101(b)(3) (eff. Sept. 17, 2019) provides that the Illinois Rules of Evidence are inapplicable in "postconviction hearings." See *Robinson*, 2020 IL 123849, ¶ 78. This rule encompasses both second and third stage postconviction hearings. *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 116. Accordingly, hearsay evidence is not rendered inadmissible in such hearings by the rules of evidence. See *Robinson*, 2020 IL 123849, ¶¶ 78-80; *Velasco*, 2018 IL App (1st) 161683, ¶¶ 114-16.

¶ 43        However, "[h]earsay evidence may be treated differently at the second stage than at the third stage." *Velasco*, 2018 IL App (1st) 161683, ¶ 117. At the second stage, any affidavits containing hearsay that do not conflict with the record are taken as true in determining whether the defendant has made a substantial showing of a claim of actual innocence. *Id.*; see *Robinson*, 2020 IL 123849, ¶¶ 80-83.

"By contrast, if a petition advances to a third-stage evidentiary hearing, a defendant will 'no longer enjoy[ ] the presumption that the allegations in his petition and accompanying affidavits are true.' [Citation.] Instead, as to a claim of actual innocence, the postconviction court at the third stage is to decide the weight to be given the testimony and evidence, make credibility determinations, and resolve any evidentiary conflicts. [Citation.] In determining the weight to be given the new evidence and whether all the evidence, new and old, is so conclusive that it is more likely than not that no reasonable juror would find defendant guilty beyond a reasonable doubt on retrial, the court at the third stage must necessarily consider whether the new evidence would ultimately be admissible at a retrial."

*Velasco*, 2018 IL App (1st) 161683, ¶ 118.

See *People v. House*, 2023 IL App (4th) 220891, ¶ 94 ("[T]he primary purpose of a third-stage hearing is to test the reliability, credibility, or veracity of the new evidence and determine whether the new evidence is compelling enough to place the trial evidence in a new light and undermine confidence in the finding of guilt.").

¶ 44 We find that defendant has forfeited any argument on appeal that he made a substantial showing of an actual innocence claim at the third stage based on Baker's affidavit. Initially, we note that the parties are correct that the trial court improperly refused to admit Baker's affidavit at the third-stage hearing on the basis that it constituted hearsay, as the Illinois Rules of Evidence do not apply to postconviction proceedings. See Ill. R. Evid. 1101(b)(3) (eff. Sept. 17, 2019); *Robinson*, 2020 IL 123849, ¶ 78. However, defendant does not argue that the affidavit was credible or trustworthy or that the affidavit would have been admissible in the event of a new trial. See *Velasco*, 2018 IL App (1st) 161683, ¶ 118. Instead, because defendant

insists that the petition was dismissed at the second stage, he contends that the credibility and potential admissibility of the affidavit are irrelevant because supporting evidence must be taken as true at the second stage unless it is positively rebutted by the record.

¶ 45 Defendant later asserts in his reply brief: "Alternatively, if this Court finds [defendant's] petition advanced to a third-stage evidentiary hearing, this Court should reverse his conviction and remand for a new trial." However, this conclusory sentence is not sufficient to constitute a substantive argument that Baker's unnotarized affidavit was sufficient to meet defendant's third-stage burden. Moreover, "[p]oints not argued [in the initial appellate brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Accordingly, we find defendant's argument that he made a substantial showing of an actual innocence claim at the third stage to be forfeited.

¶ 46 We do not address defendant's alternative argument that, should we find that the lack of notarization in Baker's statement was a defect preventing a finding of a substantial showing of a constitutional violation, postconviction counsel provided unreasonable assistance in failing to remedy the lack of notarization. This argument, like defendant's primary argument, rests on the assumption that the petition was dismissed at the second stage of proceedings. Defendant has made no substantive argument that Baker's affidavit would have been sufficient to carry his burden at the third stage, even if it had been notarized. We also note that postconviction counsel indicated he attempted to secure Baker's presence in court to testify but could not locate him.

¶ 47 B. Ineffective Assistance of Trial Counsel

¶ 48 Defendant next argues that he made a substantial showing of a claim that his trial counsel provided ineffective assistance by failing to call Linear as an alibi witness based on

- 13 -

Linear's affidavit and his testimony at the hearing on the postconviction petition.

¶ 49  "Every defendant has a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Constitution of Illinois." *People v. Domagala*, 2013 IL 113688, ¶ 36; see U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are analyzed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under this standard, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36. That is, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.*

¶ 50  "Whether to call certain witnesses is a matter of trial strategy, and such decisions enjoy a strong presumption they are sound and therefore they are not usually found to be the basis for a finding of ineffective assistance of counsel." *People v. Beard*, 356 Ill. App. 3d 236, 244 (2005); see *People v. Smith*, 195 Ill. 2d 179, 188 (2000) ("Matters of trial strategy are generally immune from claims of ineffective assistance of counsel.").

¶ 51  At the third stage of postconviction proceedings, "a judge's factual findings and credibility determinations *** should be disturbed only if manifestly erroneous, that is, only if the court committed an error that is clearly evident, plain, and indisputable." (Internal quotation marks omitted.) *People v. Eubanks*, 2021 IL 126271, ¶ 47. However, the trial court's ultimate determination of whether counsel rendered ineffective assistance is a question of law we review

*de novo*. *People v. Haynes*, 2024 IL 129795, ¶ 23; *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 55.

¶ 52        The State argues that defendant forfeited any third-stage argument related to this claim by failing to raise it in his initial brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Defendant contends in his reply brief that he did not forfeit a third-stage argument because a postconviction petitioner bears the burden of making a substantial showing of a constitutional violation at both the second and third stages of proceedings and he argued in his initial brief that he made a substantial showing of a claim of ineffective assistance of counsel. Whereas defendant's actual innocence argument completely relied on taking as true the allegations in a hearsay affidavit that the trial court did not admit at the evidentiary hearing, defendant's argument that he made a substantial showing of a claim of ineffective assistance of trial counsel addressed, at least in part, whether Linear's testimony at the third-stage hearing was sufficient to meet the burden of making a substantial showing of a claim of ineffective assistance. Accordingly, we will set any potential forfeiture aside and address the issue.

¶ 53        We find the trial court did not err by determining that defendant's evidence failed to overcome the presumption that trial counsel's decision not to call Linear as a witness was the product of sound trial strategy. Linear testified at the evidentiary hearing that he was with defendant all day at Perry's residence on the day of the shooting and he and defendant never went to the location of the shooting. Linear stated that he and defendant left the residence to go to a nearby gas station, which took approximately 15 minutes, and this was the only time they left the residence. However, contrary to Linear's testimony at the evidentiary hearing, the State presented video evidence at the trial, showing that defendant and Linear left Perry's residence shortly before the shooting and did not return for approximately three hours. While Detective

Dudley testified that his identification of defendant and Linear in the video was based on their mannerisms, height, weight, and race, rather than the ability to view their faces, he asserted that he was familiar with both Linear and defendant and had multiple prior contacts with them.

¶ 54 As defendant failed to call trial counsel as a witness at the evidentiary hearing, the record does not contain trial counsel's explanation as to why he did not call Linear as a witness. However, based on the evidence presented at the evidentiary hearing and at the bench trial, trial counsel may have made a strategic decision not to call Linear as a witness so that the State would not have the opportunity to confront him with the surveillance video evidence. Significantly, trial counsel presented other alibi evidence through Perry's testimony. Under these circumstances, the trial court did not err in finding that defendant failed to overcome the presumption that counsel's decision not to call Linear as a witness was the product of sound trial strategy.

¶ 55 C. Unreasonable Assistance of Postconviction Counsel

¶ 56 Defendant argues that postconviction counsel rendered unreasonable assistance at the second stage of postconviction proceedings by failing to substantially comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) where (1) none of the claims of ineffective assistance of trial counsel in the amended petition were in proper legal form and (2) "postconviction counsel failed to comply with Rule 651(c) as he failed to shape defendant's actual innocence claim into the proper legal form by abandoning it at the second stage hearing." Defendant contends the matter must be remanded for new second stage proceedings, regardless of whether the claims in the amended postconviction petition were meritorious.

¶ 57 1. *Ineffective Assistance of Trial Counsel*

¶ 58 Defendant argues that postconviction counsel failed to comply with Rule 651(c) by failing to shape defendant's claims of ineffective assistance of trial counsel into proper legal

form in the amended postconviction petition. Specifically, defendant contends that several of the ineffective assistance of counsel claims did not clearly indicate how trial counsel's performance was deficient. Defendant further argues that the amended petition did not specifically indicate how defendant was prejudiced by trial counsel's actions or omissions with respect to any of the claims.

¶ 59 A postconviction petitioner has no constitutional right to the assistance of counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Rather, the right to counsel in postconviction proceedings is wholly statutory, and a postconviction petitioner is entitled to the level of assistance granted by the Act, which is a reasonable level of assistance. *Id.* "[T]he reasonable level of assistance provided for by the Act is less than that afforded by the federal or state constitutions." (Internal quotation marks omitted.) *People v. Cotto*, 2016 IL 119006, ¶ 45.

¶ 60 To ensure that postconviction petitioners receive a reasonable level of assistance, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) prescribes the duties that postconviction counsel must perform at the second stage of proceedings. *People v. Coons*, 2024 IL App (4th) 230552, ¶ 29. Rule 651(c) provides:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

When postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of

reasonable assistance arises. *Addison*, 2023 IL 127119, ¶ 21. A defendant may overcome this presumption by showing that postconviction counsel did not substantially comply with Rule 651(c). *Id.* A defendant may make such a showing by demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition. *Id.*

¶ 61    When a postconviction petition is dismissed at the second stage and counsel has failed to substantially comply with Rule 651(c), the matter must be remanded for new second-stage proceedings, regardless of whether the claims in the postconviction petition were meritorious. See *People v. Suarez*, 224 Ill. 2d 37, 47 (2007) ("This court has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit."); *People v. Turner*, 187 Ill. 2d 406, 416 (1999) ("This court will not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)."); *People v. Jones*, 43 Ill. 2d 160, 162 (1969) ("We have held it to be error to dismiss a post-conviction petition on the pleadings *** where there has been inadequate representation by counsel, though the *pro se* petition itself fails to present a substantial constitutional claim.").

¶ 62    However, our supreme court has not prescribed specific duties that counsel must perform at the third stage. *Coons*, 2024 IL App (4th) 230552, ¶ 31. When a petition advances to a third-stage hearing, Rule 651(c) no longer applies, and the only standard for assessing postconviction counsel's performance is that of general reasonableness. *Id.* While the *Strickland* standard for ineffective assistance of counsel claims is not automatically applicable to postconviction proceedings, during which postconviction petitioners are entitled only to a reasonable level of assistance, courts have recognized that it is an "essential standard for

- 18 -

comparison." (Internal quotation marks omitted.) *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37. This is because "[i]t stands to reason that, if postconviction counsel's assistance cannot be deemed ineffective under *Strickland*, it cannot be deemed unreasonable under the Act." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 36.

¶ 63 The parties disagree as to whether a defendant may properly challenge postconviction counsel's performance at the second stage under Rule 651(c) and obtain a remand for new second-stage proceedings regardless of the merit of the postconviction claims after the petition has advanced to the third stage. The State contends that because Rule 651(c) does not apply to third-stage proceedings, defendant's argument that counsel failed to shape his claims into proper legal form in the amended petition pursuant to Rule 651(c) is meritless. Defendant argues in his reply brief that postconviction counsel's second-stage performance may be challenged, even when the petition has advanced to the third stage.

¶ 64 In support of his argument, defendant cites our decision in *People v. Chambers*, 2025 IL App (4th) 240693-U. In *Chambers*, the defendant's postconviction petition was denied after a third-stage evidentiary hearing. *Id.* ¶¶ 41-42. The *Chambers* court reversed and remanded for new second-stage proceedings, finding that the defendant had rebutted the presumption that postconviction counsel complied with Rule 651(c) at the second stage because counsel failed to make a necessary amendment to the petition by failing to raise a claim of ineffective assistance of appellate counsel. *Id.* ¶¶ 55-58. The court rejected the State's argument that postconviction counsel provided reasonable representation at the third-stage evidentiary hearing, finding that "nothing following counsel's filing of the deficient petition is relevant and the proceeding must start anew at the start of the second stage." *Id.* ¶ 58.

¶ 65 Other courts have also considered challenges to postconviction counsel's second-

stage compliance with Rule 651(c), even after a third-stage evidentiary hearing was held. In *Coons*, the defendant argued that postconviction counsel failed to substantially comply with Rule 651(c) at both the second and third stages by failing to amend the *pro se* postconviction petition and present supporting evidence at the evidentiary hearing. *Coons*, 2024 IL App (4th) 230552, ¶ 36. We found that Rule 651(c) applies only at the second stage and that defendant had failed to rebut the presumption of compliance created by postconviction counsel's Rule 651(c) certificate. *Id.* ¶¶ 36-38. We then addressed his claims concerning postconviction counsel's performance at the third-stage evidentiary hearing under the general reasonableness standard. *Id.* ¶¶ 41-53.

¶ 66　　　　　　Similarly, in *People v. Watson*, 2022 IL App (5th) 190427, ¶ 40, the defendant argued that postconviction counsel provided unreasonable assistance during the second and third stages of postconviction proceedings by, *inter alia*, failing to shape his *pro se* claims into proper legal form and failing to properly support his claims at the third-stage evidentiary hearing. The *Watson* court first found that the defendant had failed to rebut the presumption that counsel provided reasonable assistance at the second stage created by the filing of postconviction counsel's Rule 651(c) certificate. *Id.* ¶¶ 44-46. The court then applied the general reasonableness standard and found that defendant had not shown that postconviction counsel had provided unreasonable assistance during the evidentiary hearing. *Id.* ¶¶ 47-50. The Fifth District employed a similar approach in *People v. Crawford*, 2025 IL App (5th) 240516-U, ¶¶ 32-43, and *People v. Newlin*, 2026 IL App (5th) 220764-U, ¶¶ 68-82.

¶ 67　　　　　　Other courts have found that Rule 651(c) is inapplicable to claims that advance to the third stage and have refused to consider arguments that postconviction counsel failed to properly amend such claims at the second stage pursuant to Rule 651(c). For example, in *People v. Greenwell*, 2022 IL App (2d) 210641-U, ¶ 69, the Second District rejected the defendant's

argument that postconviction counsel's failure to comply with Rule 651(c) during the second stage "guaranteed" the denial of relief at the third stage. The court stated:

> "[O]nce a claim survives a motion to dismiss in the second stage and advances to the third stage, Rule 651(c) is no longer relevant. Postconviction counsel was free to put on whatever relevant evidence he could muster regardless of what transpired in the second stage. We note that petitioner neither argues that the trial court's decision regarding the claims that made it to the third stage was manifestly erroneous [citation] nor does he attempt to argue that postconviction counsel's representation was less than reasonable in the third stage [citation]. He simply argues that counsel's performance during the second stage affected the proceedings at the third stage; however, it is unclear to us how this could be the case, as counsel was free to put on evidence regarding the claims that did survive." *Id.*

¶ 68    Similarly, in *People v. Walker*, 2025 IL App (4th) 241249-U, ¶ 47, this court refused to consider the defendant's argument that postconviction counsel failed to substantially comply with Rule 651(c) by failing to adequately amend a claim that survived a motion to dismiss and was denied after a third-stage evidentiary hearing. The *Walker* court stated: "Our reason for passing over that question is that the witness claim, deservedly or not, advanced to the third stage of the postconviction proceeding, the evidentiary stage [citation]. Rule 651(c) applies only to the second stage." *Id.* ¶ 48. The court further held that once the claim advanced to a third-stage evidentiary hearing, Rule 651(c) was no longer relevant to the claim, and the question of whether it should have been amended at the second stage became an academic one. *Id.*

¶ 69    The *Walker* court distinguished *Chambers* on the basis that the *Chambers* court

- 21 -

found that postconviction counsel failed to comply with Rule 651(c), based on counsel's failure to allege a claim of ineffective assistance of appellate counsel. *Id.* ¶ 86. The *Walker* court stated:

"If postconviction counsel failed to plead, in the amended petition, a claim that should have been pleaded, it would not have mattered, as far as the omitted claim was concerned, how good postconviction counsel's performance was at the third-stage evidentiary hearing—for the omitted claim was not a subject of the hearing." *Id.*

The *Walker* court stated that, unlike in *Chambers*, the claim at issue in *Walker* was pleaded in the postconviction petition and tried at the third-stage evidentiary hearing. *Id.* ¶ 87. The court stated:

"Any pleading defects in the witness claim ceased to matter when the objective of the second stage was achieved: advancement to the third stage. Whether that objective was achieved skillfully or unskillfully makes no difference. In any event, defendant received a trial on the witness claim. Erasing that trial would be senseless and a waste of judicial resources." *Id.*

¶ 70          We agree with the courts in *Walker* and *Greenwell* that once a claim has advanced to the third stage of postconviction proceedings, challenges to the manner in which the claim was pleaded at the second stage under Rule 651(c) are no longer relevant. See *id.* ¶ 47; *Greenwell*, 2022 IL App (2d) 210641-U, ¶ 69. Regardless of potential pleading defects, postconviction counsel at a third-stage evidentiary hearing may present "whatever relevant evidence he [can] muster regardless of what transpired in the second stage." *Greenwell*, 2022 IL App (2d) 210641-U, ¶ 69. As the *Walker* court noted, the objective of second-stage postconviction proceedings is advancement to the third stage. *Walker*, 2025 IL App (4th) 241249-U, ¶ 87. Once a defendant has received a third-stage hearing, we see no utility in remanding the matter for new second-

stage proceedings for the purpose of repleading claims that have already been tried at a third-stage hearing.

¶ 71        In the instant case, postconviction counsel fully presented defendant's claim that trial counsel provided ineffective assistance by failing to call Linear as an alibi witness at the third-stage hearing, including presenting live testimony from Linear as to what his trial testimony would have been if he had been called as a witness. We agree with the *Walker* court that, under such circumstances, "[e]rasing" the evidentiary hearing because this claim may not have been sufficiently pleaded at the second stage "would be senseless and a waste of judicial resources." *Id.* While counsel in this case did not present evidence as to the other claims of ineffective assistance of counsel at the evidentiary hearing, he argued the claims and had the opportunity to present any relevant evidence he had concerning the claims.

¶ 72        We acknowledge that in our prior decision in *Coons*, even though the postconviction petition was denied following a third-stage evidentiary hearing, we still considered and rejected the defendant's argument that postconviction counsel failed to comply with Rule 651(c) at the second stage of postconviction proceedings by failing to attach additional evidentiary support to the *pro se* postconviction petition. *Coons*, 2024 IL App (4th) 230552, ¶¶ 37-38. We note that the second-stage issue in *Coons* was straightforward. Even so, we find it was not necessary to address it at all, as the petition in that case was advanced to the third stage, where counsel had the opportunity to present any evidence he could obtain.

¶ 73                                2. *Actual Innocence*

¶ 74        Defendant argues that postconviction counsel failed to comply with Rule 651(c) because he failed to shape his actual innocence claim into proper legal form by abandoning it at "the second-stage hearing." Defendant contends that postconviction counsel failed to present the

actual innocence claim to the trial court by "predicating the entire actual innocence argument on whether the court admitted Baker's statement as an exhibit." While defendant argues that the State had no basis for objecting to the admission of Baker's affidavit, he also contends there was no need to have the affidavit admitted as an exhibit "at the second-stage hearing" because it was already attached as an exhibit to the postconviction petition. Defendant also argues that postconviction counsel mistakenly believed the court ruled against his actual innocence claim when it had simply ruled on the State's objection to admitting Baker's affidavit as an exhibit.

¶ 75　　　　As we have previously discussed, the hearing at issue in this case was a third-stage evidentiary hearing, not a second-stage hearing. While defendant frames his argument as a claim that postconviction counsel failed to shape his actual innocence claim into proper legal form pursuant to Rule 651(c), the substance of his argument does not challenge the way in which the claim was drafted in the amended postconviction petition at the second stage. Rather, defendant challenges postconviction counsel's actions at the third-stage evidentiary hearing.

¶ 76　　　　The proper standard for assessing postconviction counsel's performance at the third-stage hearing was that of general reasonableness. *Id.* ¶ 31. Assessing postconviction counsel's performance under the "general reasonableness" standard necessitates consideration of whether defendant was prejudiced by postconviction counsel's alleged deficiencies, as the *Strickland* standard for ineffective assistance of counsel claims is recognized to be an "essential standard for comparison" when conducting a general reasonableness analysis. (Internal quotation marks omitted.) *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37; see *Pabello*, 2019 IL App (2d) 170867, ¶ 36. Defendant has not argued that postconviction counsel's performance at the third-stage hearing was inadequate under the general reasonableness standard. Accordingly, defendant has forfeited such an argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

*People v. Watts*, 2026 IL App (4th) 250533

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Morgan County, No. 19-CF-226; the Hon. Jeffrey E. Tobin, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Daniel N. Arkes, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Gray H. Noll, State's Attorney, of Jacksonville (Patrick Delfino, Thomas D. Arado, and Laura Bialon, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |